Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued December 5, 2002   Decided February 11, 2003

No. 01-5312

SUSAN J. SWIFT,
APPELLANT

v.

UNITED STATES OF AMERICA,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(99cv00145)

---

*Michael D. Kohn* argued the cause for appellant. On the briefs was *Susan J. Swift*, appearing pro se.

*Douglas Letter*, Litigation Counsel, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Roscoe C. Howard Jr.*, U.S. Attorney, and *David W. Long*, Attorney.

---

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: EDWARDS, HENDERSON, and RANDOLPH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: On January 19, 1999, Susan Swift, a former Department of Justice attorney employee, brought a *qui tam* action against one employee and two former employees of the Justice Department's Office of Legal Counsel, claiming that in 1992 and thereafter they had conspired to defraud the government, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(3). For reasons unnecessary to recount, one of the defendants was dropped from the case. Swift alleged that the remaining two defendants had also violated 31 U.S.C. § 3729(a)(1) and (2) by presenting a false claim to the government. The alleged fraud, which dealt with time sheets and leave slips, amounted to $6169.20.

On April 2, 1999, without purporting to intervene, the government moved to dismiss the complaint, arguing that the amount of money involved did not justify the expense of litigation even if the allegations could be proven. Swift opposed dismissal and requested a hearing. She also sought leave to engage in discovery in order to learn the Justice Department's policy about dismissal of *qui tam* actions, and she moved to unseal the record, arguing that this would facilitate her efforts to gather information about the policy. The district court ordered a hearing, but denied Swift's motions for discovery and unsealing. After several delays and the hearing, the court dismissed the complaint, holding that the government had demonstrated that dismissal was rationally related to a valid governmental purpose. As a result, the complaint was never served on the defendants.

Swift's appeal is on the grounds that the government cannot move to dismiss without first intervening, that the government did not justify its decision to dismiss, that dismissal was improper since the government did not investigate her claims, and that the district court erred in denying her discovery and in refusing to unseal the record.

The section of the False Claims Act dealing with the government's dismissal of *qui tam* actions provides: "The Government may dismiss [a *qui tam*] action notwithstanding the objections of the [relator] if the [relator] has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A). As is evident from the quotation, the provision does not say that the government must intervene in order to seek dismissal. Swift concedes as much, but maintains that intervention is required in light of § 3730(b) and § 3730(c)(1).

Section 3730(b)(2) gives the government sixty days, plus any court-ordered extensions, "to elect to intervene and proceed with the action" after receiving the complaint and being informed of the material evidence. At the end of the sixty-day period (unless extended), the government "shall proceed with the action . . . or notify the court that it declines to take over the action." 31 U.S.C. § 3730(b)(4). Swift views § 3730(b)(4) as giving the government but two options: intervene or do not intervene. This is correct, but she misses the point that § 3730(b)(2) makes intervention necessary only if the government wishes to "proceed with the action." Ending the case by dismissing it is not proceeding with the action; to "proceed with the action" means, in the False Claims Act, that the case will go forward with the government running the litigation. *Cf. Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118 (1968).

The other provision Swift cites, § 3730(c)(1), reads: "If the Government proceeds with the action, it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the [relator]. [The relator] shall have the right to continue as a party to the action, subject to the limitations set forth in paragraph (2)." Swift's position is that the phrase "subject to the limitations set forth in paragraph (2)" means that the government's dismissal power under § 3730(c)(2) exists only within the context of § 3730(c)(1). So viewed, the government could not move to dismiss unless it had complied with § 3730(c)(1) by intervening and proceeding with the action.

Her interpretation is unwarranted. The phrase "subject to the limitations set forth in paragraph (2)" can signify only that the relator's right to remain a party after the government has intervened is constrained by the government's right to dismiss the action pursuant to § 3730(c)(2). Swift's interpretation requires one to read "subject to" as also having the converse meaning—that § 3730(c)(1) acts as a limit on the operation of § 3730(c)(2). Nothing in § 3730(c)(1) justifies that reading. To support Swift's interpretation, either § 3730(c)(2) would have to be a subsection of § 3730(c)(1)—which it is not—or § 3730(c)(2) would have to contain language stating that it is applicable only in the context of § 3730(c)(1)—which it does not (as highlighted by the fact that § 3730(c)(2) contains two express constraints on the government's ability to dismiss, neither of which is related to § 3730(c)(1)). In other words, the second sentence of § 3730(c)(1) is limited by § 3730(c)(2), but § 3730(c)(2) is independent of § 3730(c)(1).

In any event, the question whether the False Claims Act requires the government to intervene before dismissing an action is largely academic. As Swift conceded at oral argument, if there were such a requirement, we could construe the government's motion to dismiss as including a motion to intervene, a motion the district court granted by ordering dismissal. *See United States ex rel. Neher v. NEC Corp.*, No. 92–2854, slip op. at 30 (11th Cir. Apr. 28, 1995).

Swift has a separate reason why the district court improperly dismissed the case. The district court applied the standard stated in *United States ex rel. Sequoia Orange Co. v. Sunland Packing House Co.*, 912 F. Supp. 1325, 1339 (E.D. Cal. 1995), *aff'd sub nom. United States ex rel. Sequoia Orange Co. v. Baird–Neece Packing Corp.*, 151 F.3d 1139 (9th Cir. 1998). Under that standard, the government may dismiss a *qui tam* case over the relator's objection if (1) the government shows that the dismissal is rationally related to a valid purpose, and (2) once the government satisfies this burden, the relator fails to show that the decision to dismiss was fraudulent, illegal, or arbitrary and capricious. *Sequoia*, 151 F.3d at 1145.

We hesitate to adopt the *Sequoia* test. It may be that despite separation of powers, there could be judicial review of the government's decision that an action brought in its name should be dismissed. *Cf. United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975). But we cannot see how § 3730(c)(2)(A) gives the judiciary general oversight of the Executive's judgment in this regard. The section states that "The Government"—meaning the Executive Branch, not the Judicial—"may dismiss the action," which at least suggests the absence of judicial constraint. To this must be added the presumption that decisions not to prosecute, which is what the government's judgment in this case amounts to, are unreviewable. *Cf. Heckler v. Chaney*, 470 U.S. 821, 831–33 (1985); *Newman v. United States*, 382 F.2d 479, 480 (D.C. Cir. 1967). Reading § 3730(c)(2)(A) to give the government an unfettered right to dismiss an action is also consistent with the Federal Rules of Civil Procedure. Rule 41(a)(1)(i) permits a plaintiff to dismiss a civil action "without order of the court" if the adverse party has not yet filed an answer or a motion for summary judgment. A dismissal pursuant to Rule 41(a)(1)(i) is not subject to judicial review. *See Randall v. Merrill Lynch*, 820 F.2d 1317, 1320 (D.C. Cir. 1987). In *qui tam* actions, the complaint remains under seal for "at least" sixty days; government dismissal within that period necessarily occurs before the defendant has answered. (If the government tried to have an action dismissed after the complaint had been served and the defendant answered, it might be subject to Rule 41(a)(2), which requires an order of the court "upon such terms and conditions as the court deems proper.")

The relator's right to a hearing, as set forth in § 3730(c)(2)(A), is all that points to a role for the courts in deciding whether the case must go forward despite the government's decision to end it. The *Sequoia* court viewed this provision as authorizing judicial review of the government's reasons for dismissal, 912 F. Supp. at 1338, explaining that this would not "place an additional burden on the executive's exercise of prosecutorial discretion, because the constitution itself prohibits arbitrary or irrational prosecutorial decisions." *Id.* at 1340. This is not an accurate statement of constitution-

al law with respect to the government's judgment not to prosecute. The Constitution entrusts the Executive with duty to "take Care that the Laws be faithfully executed." U.S. CONST., art. II, § 3. The decision whether to bring an action on behalf of the United States is therefore "a decision generally committed to [the government's] absolute discretion" for the reasons spelled out in *Heckler v. Chaney*, 470 U.S. at 831. The government's discretion to dismiss an action it has already brought may not be absolute, but even then courts presume the Executive is acting rationally and in good faith. *See, e.g.*, *Rinaldi v. United States*, 434 U.S. 22, 30 (1977); *see also United States v. Armstrong*, 517 U.S. 456, 464–65 (1996). Nothing in § 3730(c)(2)(A) purports to deprive the Executive Branch of its historical prerogative to decide which cases should go forward in the name of the United States. The provision neither sets "substantive priorities" nor circumscribes the government's "power to discriminate among issues or cases it will pursue." *Heckler v. Chaney*, 470 U.S. at 833. We therefore conclude that the function of a hearing when the relator requests one is simply to give the relator a formal opportunity to convince the government not to end the case. While the government conceded at oral argument that there may be an exception for "fraud on the court," no evidence of that sort was presented, and we therefore do not pass on whether this type of exception, or any other, might be consistent with our reading of § 3730(c)(2)(A).

The *Sequoia* court also justified its test on the basis of legislative history of the 1986 amendment to the False Claims Act. The Ninth Circuit quoted statements from a Senate committee report that a relator may object to a government motion to dismiss in order to prevent the government from "dropp[ing] . . . false claims cases without legitimate reasons" and may petition for an evidentiary hearing, which the court should grant "if the relator presents a colorable claim that the . . . dismissal is unreasonable in light of existing evidence, that the Government has not fully investigated the allegations, or that the Government's decision was based on arbitrary or improper considerations." S. REP. NO. 99–345, at 26

(1986). But this portion of the Senate report relates to an unenacted Senate version of the 1986 amendment. That version read: "If the Government proceeds with the action . . . the [relator] shall be permitted to file objections with the court and to petition for an evidentiary hearing to object to . . . any motion to dismiss filed by the Government." *Id*. at 42. The whole point here is that the government has not elected to proceed; it has elected to dismiss the case. Had the Senate version been enacted, the Senate report still would not support the Ninth Circuit's judgment.

Even if *Sequoia* set the proper standard, the government easily satisfied it. The asserted governmental interests were that the dollar recovery was not large enough to warrant expending resources monitoring the case, complying with discovery requests, and so forth, and that spending time and effort on this case would divert scarce resources from more significant cases. Although Swift believes that the costs would be relatively small, the government's goal of minimizing its expenses is still a legitimate objective, and dismissal of the suit furthered that objective. *See Heckler v. Chaney*, 470 U.S. at 831; *Selective Serv. Sys. v. Minnesota Pub. Interest Research Group*, 468 U.S. 841, 859 n.17 (1984). In addition, Swift failed to establish that the government's prosecutorial judgment was arbitrary and capricious, illegal, or fraudulent. While she asserted that the government's reasons for dismissal were pretextual, she offered nothing to support the charge.*

Few words are needed to dispose of Swift's remaining arguments. Since the government conceded the truth of Swift's allegations when it sought to dismiss, the fact that the government did not investigate the validity of her charges is of no consequence. As to her claim that she was entitled to

---

* The theory is that a relator's standing derives from the injury to the United States and a partial assignment of the government's claim for damages. *See Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 773–74 (2000). Dismissal ends the assignment.

discovery, the Supreme Court has stated that a party is not entitled to discovery of information relating to prosecutorial decisions absent a substantial threshold showing. *See Armstrong*, 517 U.S. at 463. As we have said, Swift offered no evidence to support her allegations that the government acted improperly. Nor did the district court abuse its discretion in denying Swift's motion to unseal the case. Swift did not oppose the government's motion to keep the case sealed during the proceedings on dismissal, and although she had many months to file a motion to unseal, her motion came at the eleventh-hour; granting it would have delayed the hearing, which had already been postponed twice at Swift's request. *Cf. Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 294 F.3d 148, 151 (D.C. Cir. 2002).

*Affirmed.*