**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 4, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

United States of America ex rel.
CHRISTOPHER A. WICKLIFFE and
MARK J. HANSON,

     Plaintiffs-Appellants,

v.

EMC CORPORATION,

     Defendant,

_____

UNITED STATES OF AMERICA,

     Interested Party-Appellee.

Nos. 09-4082 and 10-4174
(D.C. No. 1:06-CV-00064-DAK)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **SEYMOUR**, and **GORSUCH,** Circuit Judges.

Christopher A. Wickliffe and Mark J. Hanson ("Relators") brought this qui

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

tam action under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*[1]  They

appeal the district court's dismissal of the action on the government's motion.

We affirm.

Relators' complaint alleges EMC Corporation knowingly sold defective

computers to government agencies and fraudulently concealed information

regarding the defect.  Before EMC was served with the complaint,[2] the

government asked the district court to dismiss the action under the FCA's so-

called "first-to-file" bar, 31 U.S.C. § 3730(b)(5), after electing not to intervene.[3]

---

[1] The FCA was amended several times after the filing of this lawsuit.  *See* Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 4, 123 Stat. 1617, 1621-25; Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-02 (2010); Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1079A(c), 124 Stat. 1376, 2079 (2010).  Although some of the statutory changes are retroactive, none of the affected provisions impact our analysis in this case.

[2] When a relator files a qui tam action, "the complaint remains under seal for at least sixty days, plus any extensions, during which time the Government has the opportunity to investigate the claim and determine whether it wants to intervene."  *Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 932 (10th Cir. 2005) (citing 31 U.S.C. § 3730(b)(2) and (3)).  During this time, the complaint is not served on the defendant.  "After the Government intervenes or declines to intervene, the complaint is unsealed and served on the defendant."  *Id.* (citing 31 U.S.C. § 3730(b)(3)).

[3] "When a person brings a[ qui tam] action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."  31 U.S.C. § 3730(b)(5).  This provision "functions both to eliminate parasitic plaintiffs who piggyback off the claims of a prior relator, and to encourage legitimate relators to file quickly by protecting the spoils of the first to bring a claim."  *In re Natural Gas Royalties Qui Tam Litigation (CO2 Appeals)*, 566 F.3d 956, 961 (10th Cir. 2009).

The government contended Relators' action was barred because an earlier-filed complaint (the "Wade complaint") alleged the same essential scheme and material elements as the Relators' complaint. After considerable procedural maneuvering, the government ultimately moved to dismiss under 31 U.S.C. § 3730(c)(2)(A), which allows the government to dismiss a relator's suit "notwithstanding the objections of the [relator]" if the relator is given notice and an opportunity for a hearing.[4] The district court concluded the government had sufficient support for its § 3730(c)(2)(A) motion to dismiss, and alternatively that Relators' action was barred by the first-to-file rule of § 3730(b)(5).

"We review de novo the district court's interpretation of the FCA and its determination of what standard to apply to the Government when it moves to dismiss a *qui tam* action." *Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 930 (10th Cir. 2005). "We review the district court's dismissal of a *qui tam* action with

---

[4] The district court originally issued an order dismissing this action *sua sponte* solely on the grounds of 31 U.S.C. § 3730(c)(2)(A). Judgment was entered on April 1, 2009, and Relators filed a timely notice of appeal. Without realizing a notice of appeal had been filed, the district court withdrew its judgment and ordered supplemental briefing. We ordered the parties to submit supplemental briefs on jurisdictional questions we raised. We then abated the appeal and partially remanded the case to the district court to resolve the issues raised in the supplemental briefing. After further proceedings, the government moved to dismiss pursuant to § 3730(c)(2)(A). The district court again dismissed Relators' action under that section, and alternatively under the first-to-file rule of § 3730(b)(5). Relators filed a timely appeal. Because the district court entered a final judgment in its second decision dismissing the action, the jurisdictional issues originally reserved for the merits panel in this appeal have become moot. *See* 28 U.S.C. § 1291.

prejudice for abuse of discretion." *Id.*

Relators argue dismissal is improper under the FCA's first-to-file bar, 31 U.S.C. § 3730(b)(5), contending the earlier-filed Wade complaint was defective and therefore incapable of barring subsequent actions. Complaints alleging violations of the FCA must satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires allegations of fraud to be "state[d] with particularity." *See United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010). Both Relators and the government maintain that the heightened pleading standard of Rule 9(b) is relevant to the first-to-file bar. That is, in their view, an earlier-filed complaint in a pending action does not trigger the first-to-file bar of § 3730(b)(5) unless it satisfies the heightened pleading requirement of Rule 9(b). The parties disagree, however, about whether the Wade complaint met this heightened standard.

The circuits are split regarding whether the first-to-file bar incorporates Rule 9(b)'s particularity requirement. *Compare Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972-73 (6th Cir. 2005) (holding earlier complaint could not preempt a later-filed action under the first-to-file bar where it failed to comply with Rule 9(b)), *with United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1210 (D.C. Cir. 2011) ("[F]irst-filed complaints need not meet the heightened standard of Rule 9(b) to bar later complaints; they must provide only sufficient notice for the government to initiate an investigation into the allegedly fraudulent

-4-

practices, should it choose to do so."), *and United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 378 n.10 (5th Cir. 2009) ("The sufficiency of the [earlier] complaint under Rule 9(b) is a matter for that court to decide in the first instance."). We admit to being uneasy with the parties' suggestion that Rule 9(b)'s particularity requirement should be applied to the first-to-file bar. Such an interpretation of § 3730(b)(5) "would create a strange judicial dynamic, potentially requiring one district court to determine the sufficiency of a complaint filed in another district court, and possibly creating a situation in which the two district courts disagree on a complaint's sufficiency." *Batiste*, 659 F.3d at 1210.

We need not decide the Rule 9(b) question, however, because we may resolve this case on the government's § 3730(c)(2)(A) motion to dismiss rather than on the first-to-file rule. Although we have characterized the first-to-file bar as "a jurisdictional limit on the courts' power to hear certain duplicative qui tam suits," *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 (10th Cir. 2004), we need not reach this issue before deciding whether the government provided sufficient justification for dismissal under 31 U.S.C. § 3730(c)(2)(A). As the Supreme Court has explained, "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)).

"Jurisdiction is vital only if the court proposes to issue a judgment on the merits."
*Id.* (alteration and internal quotation marks omitted). "If . . . a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground." *Id.* at 436. But where the jurisdictional issue "is difficult to determine" and a non-merits issue "weigh[s] heavily in favor of dismissal, the court properly takes the less burdensome course." *Id.*

Dismissal under § 3730(c)(2)(A) avoids a decision on the merits, *see Sinochem*, 549 U.S. at 431, and "does not entail any assumption by the court of substantive law-declaring power," *see id.* at 433 (internal quotation marks omitted). Thus, we may address this issue without deciding the complicated first-impression issue of the applicability of Rule 9(b) to § 3730(b)(5). *See Sinochem*, 549 U.S. at 435-36 (resolving case under non-merits *forum non conveniens* doctrine was proper where "subject-matter jurisdiction presented an issue of first impression").[5]

The FCA provides that the government may dismiss a qui tam action "notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has

---

[5] Relators also argue that the Wade complaint was jurisdictionally defective because it violated the FCA's public disclosure rule. *See* 31 U.S.C. § 3730(e)(4)(A). For the reasons stated above, however, we also need not address this issue.

provided the person with an opportunity for a hearing on the motion."  31 U.S.C. § 3730(c)(2)(A).  The government is not required to intervene in the action before moving to dismiss it under § 3730(c)(2)(A).  *Ridenour*, 397 F.3d at 932.

We have not articulated what level of scrutiny a district court should apply when the government moves to dismiss a qui tam action under § 3730(c)(2)(A) before the defendant has been served with the complaint.  Where the defendant had been served, the Ninth Circuit held that a qui tam action may be dismissed pursuant to § 3730(c)(2)(A) if "the government offers reasons for dismissal that are rationally related to a legitimate government interest . . . ."  *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1147 (9th Cir. 1998).  The D.C. Circuit subsequently declined to adopt the *Sequoia* test, holding instead that § 3730(c)(2)(A) provides the government a virtually "unfettered right to dismiss [the] action."  *Swift v. United States*, 318 F.3d 250, 252 (D.C. Cir. 2003).  In its view, the government's decision to dismiss a qui tam action under § 3730(c)(2)(A) is nearly unreviewable by the court,[6] and "the function of a hearing when the relator requests one is simply to give the relator a formal opportunity to convince the government not to end the case."  *Id.* at 253. The defendants in *Swift* had not yet been served with the complaint, *id.* at 251, but

---

[6] *Swift* left open the possibility that there may be rare exceptions to this rule, as in cases involving fraud on the court.  *See Swift*, 318 F.3d at 253; *see also Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 65 (D.C. Cir. 2008).

-7-

the D.C. Circuit subsequently applied *Swift*'s interpretation of § 3730(c)(2)(A) in a case where the defendant had been served. *See Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 65 (D.C. Cir. 2008).

In *Ridenour*, 397 F.3d 925, we were asked to decide what standard applies when the government moves to dismiss a qui tam action under 31 U.S.C. § 3730(c)(2)(A) after the defendant has been served. We adopted the *Sequoia* test, which requires the government to identify a valid governmental purpose that is rationally related to dismissing the action. *Id.* at 936 (quoting *Sequoia*, 151 F.3d at 1145). If the government satisfies this test, the burden shifts to the relator to show that dismissal is "fraudulent, arbitrary and capricious, or illegal." *Id.* (internal quotation marks omitted). "[T]o establish a rational relation to a valid governmental purpose, there need not be a tight fitting relationship between the two; it is enough that there are plausible, or arguable, reasons supporting the agency decision." *Id.* at 937 (alteration and internal quotation marks omitted). We expressly declined to decide "whether § 3730(c)(2)(A) gives the judiciary the right to pass judgment on the Government's decision to dismiss an action where the defendant has not been served and where the Government did not intervene in the action, facts of the sort presented in *Swift*." *Id.* at 936 n.17. As a result, it remains an open question in this Circuit whether *Swift* or *Sequoia* provides the proper scope of judicial review in cases such as the one before us.

The government urges us to apply *Swift*, and Relators ask us to extend

-8-

*Ridenour* and follow *Sequoia*. The district court found it likely we would follow *Swift* but also concluded the government satisfied "the slightly more restrictive *Ridenour* standard." Aplt. App., vol. I at 204. We need not resolve this question because even under the greater judicial scrutiny imposed by the *Sequoia* standard, the government's motion to dismiss passes muster in this case.

In support of its § 3730(c)(2)(A) motion, the government asserted it had become aware of the allegations against EMC in 2004, before Relators filed this suit, and had been investigating EMC since then. It explained that it had resolved the fraud allegations against EMC by entering into a settlement agreement with EMC and Mr. Wade in the related Wade action. The government attached the notice given to Relators in this case regarding the Wade settlement. During oral argument in this appeal, Relators' counsel conceded the Wade settlement prevents the government from recovering additional damages from EMC.

The government has a valid interest in ending duplicative litigation involving resolved claims. *Cf. Grynberg*, 390 F.3d at 1279 ("Once an initial qui tam complaint puts the government and the defendants on notice of its essential claim, all interested parties can expect to resolve that claim in a single lawsuit."). Dismissal of the current action is rationally related to the government's interest in ending a duplicative action that would result in no recovery for the government. Thus the government has met the burden established in *Sequoia*. *See Ridenour*, 397 F.3d at 936-37.

Because the government provided a rational reason for dismissing this action, the burden shifted to Relators under the *Sequoia* standard "to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." *Id.* at 937 (internal quotation marks omitted). They failed to do so. Relators essentially argue that dismissal under § 3730(c)(2)(A) is arbitrary and capricious because they – not Mr. Wade – are the proper relators and are entitled to a share of any settlement with EMC. *See* 31 U.S.C. § 3730(d). But the potential merit of a qui tam action is insufficient to overcome the government's rational reasons for dismissing the suit. In both *Sequoia*, 151 F.3d at 1143, and *Ridenour*, 397 F.3d at 930, the government conceded for purposes of its motions to dismiss that the suits were meritorious. In neither case was the merit of the qui tam action sufficient for the relator to prevent dismissal under § 3730(c)(2)(A). Even "a meritorious suit may be dismissed upon a proper showing [by the government]." *Sequoia*, 151 F.3d at 1144. Relators also speculate that their qui tam action provided a catalyst for, or evidence used in, settlement of the Wade action. Such speculation, without more, is insufficient to demonstrate the government is engaging in fraudulent, illegal, or arbitrary and capricious action.

Finally, Relators complain that they were not afforded an adequate hearing on the § 3730(c)(2)(A) motion. We are not persuaded. A relator's request for a hearing under § 3730(c)(2)(A) is "only to be granted if [the] relator[] can show a 'substantial and particularized need for a hearing.'" *Ridenour*, 397 F.3d at 931

(quoting S. Rep. 99-345, at 26 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5291).  We have noted that Congress intended such hearings "should not pose a significant burden for the government or courts."  *Id.* at 931 n.10.  Here, Relators made no effort to show they had a "substantial and particularized need" for an evidentiary hearing.  And, in any event, the issues raised in the government's § 3730(c)(2)(A) motion were addressed during the district court's hearing on April 28, 2010.  Relators do not claim they were denied a right to present their argument against dismissal.  Their displeasure with the government's proffered reasons for dismissal does not render the hearing inadequate.

We AFFIRM.

ENTERED FOR THE COURT

Stephanie K. Seymour
Circuit Judge