2021 IL App (1st) 191675-U

FOURTH DIVISION
March 31, 2021

No. 1-19-1675

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| STATE OF ILLINOIS *ex rel.* JOHN THULIS, JAMES WEBB | ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Relators-Appellants, | ) ) | |
| v. | ) ) | |
| CITY OF CHICAGO, | ) ) | No. 18 L 12455 |
| Defendant, | ) ) ) | |
| and | ) ) | |
| KWAME RAOUL, ATTORNEY GENERAL OF THE STATE OF ILLINOIS, | ) ) ) ) | Honorable James E. Snyder, Judge Presiding. |
| Appellee. | ) ) | |

_____

JUSTICE REYES delivered the judgment of the court.
Justice Lampkin concurred in the judgment.
Presiding Justice Gordon dissented.

**ORDER**

¶ 1    *Held*:   Affirming the judgment of the circuit court of Cook County granting the State's motion to dismiss a *qui tam* action filed by relators under the False Claims Act against the City of Chicago relating to purported violations of Illinois unclaimed property law.

¶ 2     The Illinois False Claims Act (Act) (740 ILCS 175/1 *et seq.* (West 2018)) – formerly known as the Whistleblower Reward and Protection Act – permits private parties known as "relators" to file *qui tam* actions on behalf of the State of Illinois (the State) against the alleged perpetrators of fraud against the State and to share in the recovered proceeds in successful actions.  In the instant case, relators John Thulis and James Webb filed a *qui tam* action under the Act on behalf of the State in the circuit court of Cook County against defendant City of Chicago (the City).  The complaint alleged that the City violated the Act based on its noncompliance with the Revised Uniform Unclaimed Property Act (Revised Unclaimed Property Act) (765 ILCS 1026/15-101 *et seq.* (West 2018)) due to its failure to report or turn over to the State more than 22,000 uncashed checks with a total value in excess of $11 million.[1]  The State, through the Attorney General, filed a motion to dismiss the relators' complaint pursuant to the State's prosecutorial discretion provided in the Act (740 ILCS 175/4(c)(2)(A) (West 2018)).  In the instant appeal, the relators challenge the circuit court order granting the State's motion to dismiss and denying the relators' motion for leave to file an amended complaint.  As discussed below, we affirm.

¶ 3                                    BACKGROUND

¶ 4     The single-count complaint, filed *in camera* and under seal in accordance with the Act (740 ILCS 175/4(b)(2) (West 2018)) on November 15, 2018, provided as follows.  Pursuant to a Freedom of Information Act (FOIA) request from relators' counsel, the City produced a list of uncashed checks issued by the City between mid-1988 and mid-2018.  A total of 22,231 uncashed checks were listed, representing an aggregate unpaid balance of $11,403,473.81.  The

---

[1] The complaint alleged that the purported violations occurred for decades.  The Act and the Illinois unclaimed property statutes have changed during such period.  Since the changes do not affect the specific analysis herein, we refer to the 2018 versions of the statutes, for clarity and consistency purposes.

list, which was attached as an exhibit to the complaint, included a check for $12.73 issued to relator John Thulis in 2017 and a check for $330 issued to relator James Webb in 2014.

¶ 5 According to the complaint, uncashed checks are presumed "abandoned" three years after issuance under the Revised Unclaimed Property Act. Upon abandonment, the City is obligated to report the uncashed checks and turn over the funds to the State treasurer. The State then holds these amounts (and other "lost funds") until they are claimed by the owners or their heirs.

¶ 6 The complaint herein was based on section 3(a)(1)(G) of the Act, which provides that a person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the State, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the State" is liable to the State (740 ILCS 175/3(a)(1)(G) (West 2018)). The relators alleged that the City's failure to comply with the reporting and turnover requirements deprived the State of the "float," *i.e.*, interest-free use of the money, and deprived the rightful owners of the opportunity to search for and obtain the funds using the State treasurer's website (https://icash.illinoistreasurer.gov). The relief requested in the complaint included: (a) an order directing the City to cease and desist from violating the Act and to report and turn over the sums as required by the Revised Unclaimed Property Act; (b) judgment for the City for the amount of the State's damages, with trebled damage, and a judgment of up to $11,000 for each violation as civil penalties (see 740 ILCS 175/3(a)(1) (West 2018)); and (c) an "appropriate Relator award from the recovery" and the award of attorney fees and costs for the prosecution of the action (see 740 ILCS 175/4(d) (West 2018)).

¶ 7 The Act provides that the State may elect to intervene and proceed with the action within 60 days after its receipt of the complaint and related materials (740 ILCS 175/4(b)(2) (West

2018)). Pursuant to section 4(b)(3) of the Act (740 ILCS 175/4(b)(3) (West 2018)), the State was granted a 180-day extension in the instant case "for good cause shown" to review the relators' allegations and make an intervention determination. The court also extended the seal of the record in this action.

¶ 8    On July 1, 2019, the State filed a motion to dismiss the relators' complaint pursuant to section 4(c)(2)(A) of the Act (740 ILCS 175/4(c)(2)(A) (West 2018)), which provides: "The State may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the State of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." The State asserted that the Act gives the State broad discretion to dismiss false claims cases. Citing *State ex rel. Beeler, Schad and Diamond, P.C. v. Burlington Coat Factory Warehouse Corporation*, 369 Ill. App. 3d 507, 517 (2006) (*Burlington Coat Factory*), the State argued that a court may deny its motion to dismiss only in the most extraordinary circumstances, such as "glaring evidence of fraud or bad faith by the state." According to the State, even a relator's right to a hearing on the government's dismissal is simply a formal opportunity for the relator to convince the government not to end the case, rather than an inquiry into the merits.

¶ 9    In its motion to dismiss, the State represented that it had determined that the complaint did not set forth a viable cause of action under the Act for several reasons. First, the State asserted that the action was precluded by the "public disclosure bar" under section 4(e)(4)(A) of the Act (740 ILCS 175/4(e)(4)(A) (West 2018)) as the complaint made "identical allegations" which were publicly disclosed in an article written by Maurice Possley – *Chicago, State Seek Deal Over Unclaimed Money* – and published in the *Chicago Tribune* on August 11, 2008 (https://chicagotribune.com/news/ct-xpm-2008-08-11-0808100295-story.html). According to

the State, the complaint did not contain any new material or information, thus, the relators did not provide "vital facts not in the public domain." The State also maintained that the requirement to remit unclaimed property was not "material" for purposes of a false claims action, given the State's knowledge of the City's noncompliance and subsequent nonenforcement. The State further asserted that its knowledge of the City's noncompliance with the law – combined with its effort to address the matter through negotiation – negates the fraudulent intent element of the Act. Finally, the State argued that the relators' allegations need not be address through the Act since the State treasurer has his own statutory powers to enforce the Revised Unclaimed Property Act (765 ILCS 1026/15-1002, 15-1011, 15-1201 (West 2018)).

¶ 10    In a response in opposition to the motion to dismiss, the relators relied, in part, on an unpublished federal district court case from the Southern District of Illinois, *United States ex rel. CIMZNHCA, LLC v. UCB, Inc.*, 2019 WL 1598109 (S.D. Ill. Apr. 15, 2019), *reconsideration denied*, 2019 WL 2409576 (S.D. Ill. June 7, 2019), which addressed the False Claims Act (31 U.S.C. § 3729 *et seq.*), a federal law similar to the Illinois Act. The *CIMZNHCA* court applied a two-step analysis for testing the government's justification for dismissal as set forth in *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998) (*Sequoia*): (1) identification of a valid government purpose; and (2) a rational relation between dismissal and accomplishment of the purpose. Under *Sequoia*, if the government satisfies the two-part test, the burden shifts to the relator to demonstrate that the dismissal is fraudulent, illegal, or arbitrary and capricious. *Id.*

¶ 11    The relators herein argued that the State's motion amounted to an arbitrary and capricious dismissal contrary to law as the Attorney General's office had decided to "indulge the City's intentional violation of the law," which harmed the State by "conscripting the float for the City"

and "unconsciously" harmed the parties who should have been alerted to the existence of the owed amounts. The relators further contend that the State's arguments that the claims were "not material" ignored the size and scope of the "abuse" being tolerated. As to the State's "public disclosure bar" argument, the relators noted that the *Chicago Tribune* article was published almost twelve years ago and that the article suggested that the City's practice of non-compliance with the Illinois unclaimed property law would be corrected. The relators also asserted that they were "original sources" to their own claim and that they provided new information, *i.e.*, that the City's practice had either been continued or renewed.

¶ 12    In addition to the foregoing opposition to the State's motion to dismiss, the relators sought leave to file a first amended complaint, which included claims under the Revised Unclaimed Property Act, the Interest Act (815 ILCS 205/0.01 *et seq* (West 2018)), and the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2018)). In the proposed amended complaint, the relators also sought class certification as to the three additional counts (counts II, III, and IV).

¶ 13    The State filed a reply asserting that the Attorney General's broad discretion to dismiss claims over a relator's objection is settled law, and even if the circuit court adopted the broader *Sequoia* standard, the relators' claims should be dismissed as the State has provided "good faith reasons for dismissal." The State reiterated that: (a) the relators were not an original source and they did not provide genuinely new material or information to overcome the public disclosure bar, and (b) the State's knowledge that the City does not remit unclaimed property – and that the State treasurer has not enforced unclaimed property laws against the City – negates the "materiality" and "fraudulent intent" elements of the Act.

¶ 14    On August 15, 2019, the circuit court granted the State's motion to dismiss and denied

the relators' motion for leave to file a first amended complaint. The order provided that the dismissal motion was granted pursuant to section 4(c)(2)(A) of the Act. The court subsequently granted the relators' unopposed motion to lift the seal. The relators filed the instant appeal.

¶ 15    On August 24, 2020, the relators filed a motion with this court for leave to cite additional authority, *i.e.*, the Seventh Circuit Court of Appeals decision in *United States ex rel. CIMZNHCA, LLC v. UCB, Inc.*, 970 F.3d 835 (7th Cir. 2020), which reversed the decision of the district court (discussed above). The Seventh Circuit in *CIMZNHCA* rejected the district court's application of the burden-shifting test under *Sequoia* and instead found that the "correct answer" regarding the role of a court in reviewing the government's motion to dismiss "lies much nearer" to *Swift v. United States*, 318 F.3d 250, 253 (D.C. Cir. 2003), which held that the federal False Claims Act gives the government unfettered discretion to dismiss. Since the government proposed to terminate the lawsuit, in part, as the conduct challenged therein was not only "probably lawful" but also was beneficial to the public, the Seventh Circuit directed the district court to dismiss the claims with prejudice as to the relator and without prejudice as to the government. (*CIMZNHCA*, 970 F.3d at 854). According to the relators herein, the actions of the City and the State in the instant case are "neither 'probably lawful' nor 'beneficial' to the payees or the public." The Attorney General did not oppose the relators' motion to cite, instead primarily argued that "no federal court's interpretation of the federal False Claims Act is binding authority on this court or requires departure from its prior authority interpreting the Illinois" Act, including *Burlington Coat Factory* (discussed above). We granted the relators' motion to cite the Seventh Circuit decision in *CIMZNHCA*.

¶ 16                                    ANALYSIS

¶ 17    Although the relators advance multiple arguments on appeal, their primary contention is

that the *Sequoia* standard applies, which requires the State to establish that its exercise of dismissal authority is rationally related to a legitimate government purpose (which the State purportedly did not do), and if the State satisfies that requirement, the burden then shifts to the relators to demonstrate that dismissal is fraudulent, illegal, or arbitrary and capricious (which the relators purportedly have done). The relators request that this court reverse the dismissal, to grant leave to amend the complaint, and to direct this case to proceed. The Attorney General responds that this court should affirm the dismissal as an exercise of the State's "virtually unfettered discretion" to do so under the Act. According to the Attorney General, such discretion is reviewable only for glaring evidence of fraud or bad faith. As to the denial of the relators' motion for leave to file an amended complaint, the Attorney General contends that the circuit court properly exercised its discretion to require the pursuit of any private causes of action based on personal injuries – *i.e.*, claims not raised on the State's behalf – in a separate lawsuit.

¶ 18    The Act is modeled after the federal False Claims Act and is an antifraud statute. *State ex rel. Beeler Schad and Diamond, P.C. v. Ritz Camera Centers, Inc.*, 377 Ill. App. 3d 990, 996 (2007). Under the Act, an action may be commenced by the Attorney General (740 ILCS 175/4(a) (West 2018)) or a private person may bring a *qui tam* action "for the person and for the State." 740 ILCS 175/4(b) (West 2018). See *State ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 2018 IL 122487, ¶ 4. Although *qui tam* plaintiffs may "conduct" litigation on the State's behalf subject to significant restrictions in the Act, the Attorney General retains authority to "control" the litigation at every stage of the proceedings. *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 510 (2005). See also *Lyons v. Ryan*, 201 Ill. 2d 529, 541 (2002) (noting that the legislature may add to the Attorney General's powers but cannot reduce the Attorney General's common law authority in directing the legal affairs of the State). As

observed by our supreme court, the plain language of the Act provides that the Attorney General "in all circumstances effectively maintains control over the litigation, consonant with the Attorney General's constitutional role as the chief legal officer of the state." *Scachitti*, 215 Ill. 2d at 513. "Rather than usurping the constitutional power of the Attorney General, the *qui tam* provisions of the Act support the Attorney General's law enforcement duties." *Id.*

¶ 19 As noted above, the parties dispute the applicable standard to be applied by a court in considering the State's motion to dismiss a relator's *qui tam* complaint. The relators herein contend that the two-step analysis for testing the justification for dismissal articulated by the Ninth Circuit in *Sequoia* applies: (1) identification of a valid government purpose; and (2) a rational relation between dismissal and accomplishment of that purpose. *Sequoia*, 151 F.3d at 1145. If the government satisfies the two-part test, the burden then shifts to the relator to demonstrate that dismissal is fraudulent, illegal, or arbitrary and capricious. *Id.* The relators also contend that the guidelines for dismissal of federal False Claims Act *qui tam* actions articulated by the United States Department of Justice in 2018 – known as the Granston Memo[2] – have not been met in the instant case.

¶ 20 We are unpersuaded by the relators' contentions. While Illinois courts have relied on the interpretation of the federal False Claims Act by federal courts for guidance in construing the Illinois Act (*People ex rel. Schad, Diamond and Shedden, P.C. v. QVC, Inc.*, 2015 IL App (1st) 132999, ¶ 30), federal decisions are not binding on this court in the absence of a decision by the United States Supreme Court. *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill. App. 3d

---

[2] The non-exhaustive list of factors included in the Granston Memo that the United States Department of Justice can use as a basis for dismissal include: (1) curbing meritless *qui tam* actions; (2) preventing parasitic or opportunistic *qui tam* actions; (3) preventing interference with agency policies and programs; (4) controlling litigation brought on behalf of the United States; (5) safeguarding classified information and national security interests; (6) preserving government resources; and (7) addressing egregious procedural errors.

828, 835 (2004). More importantly, this court expressly rejected the *Sequoia* test in *Burlington Coat Factory*: "If we interpret section 4(c)(2)(A) to require judicial review of the Attorney General's decision to dismiss an action, whether through application of the [*Sequoia*] test or any other 'checks and balances' approach, we give the court veto power over the state's decision to dismiss, essentially usurping the Attorney General's power to direct the legal affairs of the state and putting that power in the hands of the court." *Burlington Coat Factory*, 369 Ill. App. 3d at 516-17. The *Burlington Coat Factory* court further stated: "We hesitate to say that the court's role in a section 4(c)(2)(A) hearing is solely to 'rubber-stamp' the state's decision to dismiss a *qui tam* action over the relator's objections. However, the presumption is that the state is acting in good faith and, barring glaring evidence of fraud or bad faith by the state, it is the state's prerogative to decide which case to pursue, not the court's." *Id.* at 517.

¶ 21    The burden of presenting glaring evidence of fraud or bad faith by the State in dismissing the *qui tam* action is on the relators. *Id.*; *QVC*, 2015 IL App (1st) 132999, ¶¶ 21, 35. As the appellants herein, the relators have the burden of presenting a sufficiently complete record of the circuit court proceedings, and any doubts arising from the incompleteness of the record will be resolved against them. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). On the record presented, we cannot conclude that the circuit court erred in granting the State's motion to dismiss.

¶ 22    We initially observe that the record does not include any transcript or other report of proceedings of any circuit court hearing on the State's motion to dismiss. Although the relators contend that no hearing was held, the record suggests that the relators did not request a hearing. Under section 4(c)(2)(A) of the Act, the State may dismiss a *qui tam* action notwithstanding the objections of the relator if the relator has been notified of the filing of the motion to dismiss and

the court has provided the relator with "an opportunity for a hearing on the motion." 740 ILCS 175/4(c)(2)(A) (West 2018). " 'An opportunity for a hearing,' however, requires that relators avail themselves of the 'opportunity.' " *United States and State of Delaware, ex rel. Chang v. Children's Advocacy Center of Delaware*, 938 F.3d 384, 387-88 (3d Cir. 2019) (addressing the federal False Claims Act and the Delaware False Claims Act). In other words, no hearing is required where none is requested. See *id.* We further observe that the relators' counsel attended a hearing on its unopposed motion to lift the seal after the entry of the dismissal order. There is, however, no indication in the record that the relators challenged the alleged failure of the circuit court to conduct a hearing on the State's dismissal motion by filing a motion for reconsideration or otherwise.

¶ 23    We further note that the arguments advanced and evidence presented in the relators' written filings with the circuit court do not suggest any glaring evidence of fraud or bad faith by the State in dismissing the *qui tam* action. At its core, the relators' argument is relatively simple, *i.e.*, the fact that the State has chosen to *not* pursue the City for its purported violations of the unclaimed property laws through the relators' *qui tam* action is indicative of its bad conduct. The Attorney General's alleged inaction, however, is not the type of "glaring evidence of fraud or bad faith" (*Burlington Coat Factory*, 369 Ill. App. 3d at 517) that would warrant a deprivation of its prosecutorial discretion as the chief legal officer of our state (*Scachitti*, 215 Ill. 2d at 513). The circuit court was not required to "second guess the state's decision to dismiss by conducting an inquiry into the state's motivations." *Burlington Coat Factory*, 369 Ill. App. 3d at 517.

¶ 24    In any event, we question whether the alleged violations by the City are even appropriate for a *qui tam* action. Our supreme court has consistently recognized that in a *qui tam* action under the False Claims Act, there is "no cognizable injury in fact suffered by the relator." *State*

*ex rel. Leibowitz v. Family Vision Care, LLC*, 2020 IL 124754, ¶ 63, citing *Scachitti*, 215 Ill. 2d at 508. See also *Burlington Coat Factory*, 369 Ill. App. 3d at 513 (stating that "a relator has suffered no direct injury as a result of false claims under the Act" and "[o]nly the State has been injured by the false claims and is the real party in interest"). In the instant case, the underlying property interests belong to the relators and the thousands of other payees on the uncashed checks at issue.

¶ 25 For the foregoing reasons, we affirm the circuit court's grant of the State's motion to dismiss the complaint. See *Scachitti*, 215 Ill. 2d at 515 (noting that "*qui tam* plaintiffs, acting as statutorily designated agents for the state, may proceed only with the consent of the Attorney General, and remain completely subordinate to the Attorney General at all times").

¶ 26 The relators also challenge the circuit court's denial of its motion to amend the complaint to add multiple counts. A ruling on a motion to amend is reviewed for an abuse of discretion. *City of Chicago v. City of Kankakee*, 2019 IL 122878, ¶ 20. In their proposed amended complaint, the relators included claims under the Revised Unclaimed Property Act, the Interest Act (815 ILCS 205/0.01 *et seq* (West 2018)), and the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2018)) and sought class certification. We find that there was no abuse of discretion where those claims – brought directly on behalf of the payees of the uncashed checks – were fundamentally different from the *qui tam* action ostensibly brought on behalf of the State. We further note that the relators' counsel stated during oral argument before this court that these additional claims are currently the subject of separate pending litigation.

¶ 27                                    CONCLUSION

¶ 28 For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in

its entirety.

¶ 29    Affirmed.

¶ 30    PRESIDING JUSTICE GORDON, dissenting:

¶ 31    The relators in the case at bar claim that the City of Chicago (City) has failed to report or turn over to the State of Illinois more than 22,000 uncashed checks totaling more than $11 million. As a result, the relators sued the City in a *qui tam* whistleblower case for a violation of the Revised Uniform Unclaimed Property Act (765 ILCS 1026/1 *et seq.* (West 2018)). The State moved to dismiss, and the trial court granted the dismissal, and on appeal, the majority basically finds that the State has an unlimited authority to dismiss such cases regardless of its basis or reasoning. The majority bases its decision on section 4(c)(2)(A) of the Illinois False Claims Act (the Act) (740 ILCS 175/4(c)(2)(A) (West 2018)), which states: "The State may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the State of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion."

¶ 32    The federal False Claims Act (31 U.S.C. § 3729 *et seq.*) and the Illinois False Claims Act have similar provisions. The Illinois Act closely mirrors the federal version, and as a result, I find the federal court's analysis in the Ninth Circuit to be instructive. In *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139 (9th Cir. 1998), the Ninth Circuit found that the government must make a "proper showing" (*United States ex rel. Sequoia Orange Co.*, 151 F.3d at 1144) to demonstrate a " 'valid government purpose' " for dismissal (*United States ex rel. Sequoia Orange Co.*, 151 F.3d at 1145 (quoting *United States ex rel. Sequoia Orange Co. v. Sunland Packing House Co.*, 912 F.Supp. 1325, 1341 (E.D. Cal. 1995)), not a decision that is "arbitrary and capricious" (*United States ex rel. Sequoia Orange Co.*, 151

F.3d at 1144). The trial court imposed that standard despite conceding that the dismissal section of the federal act mirrors the state section.

¶ 33    The legislative history of the federal act, including its 1986 amendments, support the Ninth Circuit's conclusions that there must be a proper showing for a dismissal and that the government should not drop a false claims case without legitimate governmental reasons. S. Rep. No. 99-345, at 25-26 (1986). As noted, Illinois' Act clearly mirrors the federal version, and I support the Ninth Circuit's decision. At a time in our country's history where many citizens have lost faith in the way that government does business at the local, state, and federal level, transparency is needed to regain citizens' confidence.

¶ 34    In the case at bar, the State contends that it has "virtually unfettered discretion" to dismiss under the Act, and that such discretion is reviewable only for glaring evidence of fraud or bad faith. Here, the State provided no evidence of valid reasons to allow the City to continue in not complying with the Act, and the trial court held no evidentiary hearing to make any findings. I realize that the relators made no request for a hearing, but I believe that findings are required and that the court should conduct such a hearing whether the parties request it or not.

¶ 35    In paragraph 23 of its decision, the majority notes that the arguments advanced and evidence presented in the relators' written findings with the circuit court do not suggest any glaring evidence of fraud or bad faith by the State in dismissing the *qui tam* action. I do not find this argument persuasive. I conclude that, at a minimum, the conduct of the State shows glaring evidence of bad faith when no reasons are given by the State for allowing the City to continue its alleged wrongful conduct.

¶ 36    The State cites *State ex rel. Beeler, Schad and Diamond, P.C. v. Burlington Coat Factory Warehouse Corporation*, 369 Ill. App. 3d 507 (2006) (*Burlington Coat Factory*), as its authority

in support of its motion to dismiss. In the *Burlington Coat Factory* case, the relator alleged that Burlington Direct, an internet sales company incorporated in New Jersey with retail stores in Illinois, violated the Whistleblower Reward and Protection Act (740 ILCS 175/1 et seq. (West 2002)) when it failed to collect and remit use tax to the state of Illinois on its internet sales to customers in Illinois. *Burlington Coat Factory*, 369 Ill. App. 3d at 509. The appellate court in *Burlington Coat Factory* found that the State's discretion to dismiss is not subject to the *Sequoia Orange* "checks and balances" test, but that the State's discretion to dismiss is not entirely unfettered. *Burlington Coat Factory*, 369 Ill. App. 3d at 512. The appellate court in the Burlington Coat Factory case found that neither fraud nor bad faith was alleged. *Burlington Coat Factory*, 369 Ill. App. 3d at 517. In the case at bar, there are allegations of bad faith in the relators' response to the motion to dismiss, which distinguishes the *Burlington Coat Factory* case from the case at bar. In their allegations of bad faith by the State, I find that the *Sequoia Orange* factors are triggered, and the parties must be given a hearing to allow the trial court to make a determination of whether there is or there is not bad faith by the State in dismissing the action. As a result, I must respectfully dissent, and I would reverse the granting of the motion to dismiss and require the trial court to have a hearing to make its findings, and I would allow the amended complaint to proceed.