THIRD DIVISION
December 6, 2006

No. 1-05-3824

| | | |
|---|---|---|
| THE STATE *ex rel.* BEELER, SCHAD AND DIAMOND, P.C., | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| BURLINGTON COAT FACTORY WAREHOUSE CORPORATION and BURLINGTON COAT FACTORY DIRECT CORPORATION, | ) ) ) ) | |
| Defendants-Appellees | ) ) | |
| (The State of Illinois, Appellee; Beeler, Schad and Diamond, P.C., Appellant). | ) ) ) ) | Honorable Ronald F. Bartkowicz, Judge Presiding. |

JUSTICE KARNEZIS delivered the opinion of the court:

Plaintiff-relator Beeler, Schad and Diamond, P.C. (relator), filed a *qui tam* action in the name of the State of Illinois (the state) against defendants Burlington Coat Factory Warehouse Corporation (Burlington Corporation) and Burlington Coat Factory Direct Corporation (Burlington Direct) (collectively defendants) pursuant to the Whistleblower Reward and Protection Act (740 ILCS 175/1 *et seq.* (West 2002)). Relator alleged that Burlington Direct, an Internet sales company incorporated in New Jersey, violated the Act when it failed to collect and remit use tax to the state on its Internet sales to customers in Illinois. The Attorney General of the State of Illinois

intervened and moved for voluntary nonsuit and dismissal. The court granted the motion to dismiss. Relator appeals, arguing that the court erred in denying relator's request for discovery and in granting the motion to dismiss. We affirm.

Background

Burlington Corporation is a Delaware corporation with its principal place of business in New Jersey. There are 19 Burlington Coat Factory (BCF) stores in Illinois, each incorporated separately as an Illinois corporation. Burlington Direct is a subsidiary of Burlington Corporation and sells BCF merchandise on the Internet. Consumers shopping for BCF merchandise on the Burlington Corporation website are automatically directed to the Burlington Direct website in order to select and complete their purchases. Customers who purchase merchandise from the Burlington Direct website can return the merchandise to a BCF store for exchange or store credit if they have prior approval from Burlington Direct. They cannot get a refund of the purchase price from the stores.

Pursuant to the Use Tax Act (35 ILCS 105/1 *et seq.* (West 2002)), if an out-of-state retailer maintains a place of business in Illinois, it has a duty to collect and remit use tax to the state for sales it makes to customers in Illinois. 35 ILCS 105/3-45 (West 2002). Burlington Direct makes sales to Illinois customers through its website. From 1998 through 2003, it did not collect and remit use tax on those sales. Relator filed suit against defendants in the name of the state, alleging defendants knowingly made false claims about their use tax liability in violation of the Whistleblower Reward and

Protection Act. Relator contended that Burlington Direct had a duty to collect and remit use tax on the sales because it maintains a place of business in Illinois through the 19 BCF stores in Illinois, asserting that Burlington Corporation controls the 19 BCF stores in Illinois as well as Burlington Direct and that they are all the same business. As proof that the stores operate in tandem with Burlington Direct and are, therefore, a place of business for Burlington Direct in Illinois, relator points out that Burlington Direct and the stores sell the same merchandise; operate under the same management, distribution and ordering systems; use common advertisements in newspapers and on Burlington Corporation's website; cooperate in making exchanges and refunds; and facilitate sales on the Burlington Corporation website by automatically redirecting customers to the Burlington Direct website for purchases of any Burlington Coat Factory merchandise.

The Whistleblower Reward and Protection Act (the Act) is an anti-fraud statute. Pursuant to section 3 of the Act, a person is liable to the state for civil penalties and triple damages for any damage the state sustains as a result of fraud perpetrated by that person on the state, such as for knowingly making or using false records or statements to conceal, avoid or decrease an obligation to pay or transmit money or property to the state. 740 ILCS 175/3(a)(7) (West 2002). The Attorney General may bring a civil action in the name of the state for violation of the Act. 740 ILCS 175/4(a) (West 2002). A private person, referred to as a "relator," may also bring a civil action in the name of the state for a violation of the Act, for that person and for the state. 740 ILCS 175/4(b)(1) (West 2002). Such an action is referred to as a "*qui tam*" action. 740

ILCS 175/4(c) (West 2002). Once a relator files a *qui tam* action, the state may intervene, proceed with the action and take over conduct of the action; or it may decline to intervene, thus giving the relator the right to conduct the action. 740 ILCS 175/4(b)(4) (West 2002). A relator is considered "a party to the action" and, if a suit is successful, is awarded a percentage of the proceeds or settlement. 740 ILCS 175/4(c)(1), (d) (West 2002).

Relator's *qui tam* action alleged that Burlington Direct's Internet order confirmations falsely stated that no tax was due from its customers, defendants' failure to collect and remit the tax Burlington Direct caused damages to the State of Illinois and defendants knowingly made false records and statements to conceal their use tax obligation and their failure to satisfy it. The Attorney General intervened in the action. Almost two years later, after numerous agreed to extensions, the Attorney General moved for nonsuit and voluntary dismissal, asserting that there was probably not a sufficient nexus with Illinois under the commerce clause for Burlington Direct, an out-of-state company, to collect use tax on sales to customers in Illinois. Relator objected.

Under section 4(c)(2)(A) of the Act, the state may dismiss a *qui tam* action notwithstanding the objections of the relator if the relator has been notified of the filing to the motion to dismiss and the court has provided the relator an opportunity for a hearing on the motion. 740 ILCS 175/4(c)(2)(A) (West 2002). The court held such a hearing here. It first determined that section 4(c)(2)(A) does not give the Attorney General unfettered discretion to dismiss a *qui tam* action under the Act. It then applied

4

the standard for dismissal of a *qui tam* action articulated in *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139 (9th Cir. 1998).

The Act "closely mirrors" the federal False Claims Act (31 U.S.C. §3729 *et seq.* (2000)) (FCA), which provides that a person may bring a civil action for a violation of the federal act for the person and for the United States government. *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 506-07, 831 N.E.2d 544, 557 (2005); 31 U.S.C. 3730 (2000). In a dismissal provision substantially similar to the dismissal provision in section 4(c)(2)(A) of the Act, the FCA provides that the federal government may dismiss a *qui tam* action despite objections by the relator as long as the relator is notified and has been provided an opportunity for a hearing on the dismissal. 31 U.S.C. §3730(c)(2) (2000). *Sequoia Orange* interprets this provision and sets out a two-part test for determining whether the government's motion to dismiss a *qui tam* action should be granted. *Sequoia Orange*, 151 F.3d at 1145. Under *Sequoia Orange*, the government must first identify a valid governmental purpose for the dismissal and then show a rational relation between dismissal and accomplishment of that purpose. *Sequoia Orange*, 151 F.3d at 1145. If this two-part test is satisfied, then the burden shifts to the relator to show that dismissal is fraudulent, arbitrary and capricious, or illegal. *Sequoia Orange*, 151 F.3d at 1145.

The court here found relator failed to successfully rebut the reasons advanced by the Attorney General under the *Sequoia Orange* test and granted the Attorney General's motion to dismiss the action. Relator appeals.

Analysis

Relator first argues that the court erred in granting the dismissal because, applying the *Sequoia Orange* test, (1) the Attorney General's assertion of insufficient nexus does not demonstrate a valid government purpose such that dismissal would be rationally related to that purpose and (2) the Attorney General's decision to move for dismissal was arbitrary and capricious. It may be that relator is correct on both counts. However, we do not reach these arguments because we decline to follow *Sequoia Orange*. The circuit court applied the *Sequoia Orange* test because, in its determination, the state does not have unfettered discretion to voluntarily dismiss a *qui tam* action and, unless some system of checks and balances on the state's power to dismiss is in place, the relator's interest in the suit is undermined and the court's function during the hearing on relator's objections to dismissal is meaningless.[1] While

_____

[1] The court based its decision to apply the *Sequoia Orange* test as the standard for voluntary nonsuit and dismissal of *qui tam* cases by the state on its earlier decisions in two other *qui tam* cases also filed by relator, *State of Illinois ex rel. Beeler, Schad & Diamond, P.C. v. Mikasa, Inc.*, No. 02 L 006701, and *State of Illinois ex rel. Beeler, Schad & Diamond, P.C. v. Lego Brand Retail, Inc.*, No. 03 L 010997. In *Mikasa* and *Lego*, as in the case at bar, relator sought to recover use tax from the defendants for internet sales to Illinois customers and the state intervened and moved for voluntary nonsuit and dismissal. On May 24, 2005, the court issued a thoughtful written analysis

6

we agree that the state's discretion to dismiss is not entirely unfettered, it is, however, only minimally qualified by the Act and not subject to a *Sequoia Orange* "checks and balances" test.

Section 4(c)(2)(A) provides: "The State may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the State of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 740 ILCS 175/4(c)(2)(A) (West 2002). The court found this language ambiguous because the Act fails to discuss the purpose and intent for the requisite hearing. We find the dismissal provision categorical: the state may dismiss the action notwithstanding the relator's objections as long as the realtor has been notified of the state's motion to dismiss and has had an opportunity to be heard on its objections. Granted, section 4(c)(2)(A) does not specify the court's role during the hearing or set forth what a hearing must encompass. However, reading the provision in context with the other provisions of the Act, it is clear that the state has complete control over a *qui tam* action and, accordingly, almost unlimited discretion to voluntarily dismiss such an action.

In *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 831 N.E.2d 544 (2005), our supreme court considered whether a private person has standing to bring suit

---

determining that the two-part *Sequoia Orange* test should be applied in *Mikasa* and *Lego.* It denied relator's motion for reconsideration on September 29, 2005.

under the Act and whether the *qui tam* provisions of the Act usurp the constitutional powers of the Attorney General to represent the state.  *Scachitti* held that the *qui tam* provisions do not usurp the Attorney General's constitutional power because, through the significant restrictions placed on *qui tam* plaintiffs by the Act, the Attorney General retains authority to control litigation at every stage.  *Scachitti*, 215 Ill. 2d at 510-11, 831 N.E.2d at 559-60.  "Rather than usurping the constitutional power of the Attorney General, the *qui tam* provisions of the Act support the Attorney General's law enforcement duties."  *Scachitti*, 215 Ill. 2d at 513, 831 N.E.2d at 561.  As relator points out, *Scachitti* did not specifically analyze the section 4(c)(2)(A) dismissal provision.  However, it is clear from *Scachitti* that the Attorney General has almost complete control over a *qui tam* action.  Concomitant with that control is the decision whether to dismiss a *qui tam* action.

The Attorney General is the chief legal officer of the state " 'and the only officer empowered to represent the people in any suit or proceeding in which the State is the real party in interest, except where the constitution or a constitutional statute may provide otherwise.' "  (Emphasis omitted.)  *Scachitti*, 215 Ill. 2d at 514, 831 N.E.2d at 561, quoting *Fergus v. Russel*, 270 Ill. 304, 342, 110 N.E. 130 (1915).  Section 4(b)(1) of the Act provides such an exception, permitting a relator to file a civil action in the name of the state for false claims made to the state, on his own behalf and on behalf of the state.  740 ILCS 175/4(b)(1) (West 2002).  But the Act, as a whole, makes clear that "*qui tam* plaintiffs, acting as statutorily designated agents for the state, may proceed

only with the consent of the Attorney General, and remain completely subordinate to the Attorney General at all times."  *Scachitti*, 215 Ill. 2d at 515, 831 N.E.2d at 562.

Standing alone, a relator has suffered no direct injury as a result of false claims under the Act.  *Scachitti*, 215 Ill. 2d at 507-08, 831 N.E.2d at 557-58.  Only the state has been injured by the false claims and is the real party in interest. *Scachitti*, 215 Ill. 2d at 507-08, 831 N.E.2d at 557-58.  The Act operates to give the relator a personal stake in the case, a percentage of the state's recovery under the Act, and the right to bring an action for himself and the state.  *Scachitti*, 215 Ill. 2d at 508, 831 N.E.2d at 558.  But relator's recovery is entirely incidental to that of the state.  Only through a partial assignment of the state's right to bring suit does the Act make a relator a real party in interest together with the state.  *Scachitti*, 215 Ill. 2d at 508-09, 831 N.E.2d at 558-59, following *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 146 L. Ed. 2d 836, 120 S. Ct. 1858 (2000) (analyzing the issue of standing of a *qui tam* plaintiff under the substantially similar federal False Claims Act).

Under "the plain language of the Act," "the Attorney General in all circumstances effectively maintains control over the litigation, consonant with the Attorney General's constitutional role as the chief legal officer of the state."  *Scachitti*, 215 Ill. 2d at 513, 831 N.E.2d at 561.  The Act provides that "[i]f the State proceeds with an action, it shall have *the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action*."  (Emphasis added.)  740 ILCS 175/4(c)(1) (West

2002).  The state determines the timetable for the action, because a relator's complaint must be filed in camera and remain under seal for at least 60 days while the state considers its options (740 ILCS 175/4(b)(2) (West 2002)) and the state may, for good cause shown, move for extensions of the time during which the complaint remains under seal (740 ILCS 175/4(b)(3) (West 2002)).  The state can decide whether to prosecute the action or not.  If it chooses to intervene, the action shall be conducted by the state (740 ILCS 175/4(b)(4)(A) (West 2002)); if it chooses not to intervene, the right to conduct the action is left to the relator (740 ILCS 175/4(b)(4)(B) (West 2002)).

If the state proceeds with the action, it has the primary responsibility for prosecuting the action, and is not bound by any act of the relator.  740 ILCS 175/4(c)(1) (West 2002).  Although the relator has the right to continue as a party to the action once the state intervenes, that right is subject to the limitation that the state *"may dismiss the action notwithstanding the objections of the person initiating the action* if the person has been notified by the State of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion."  (Emphasis added.) 740 ILCS 175/4(c)(2)(A) (West 2002).  Similarly, the state *may settle the action notwithstanding the objections of the relator* if "the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances."  740 ILCS 175/4(c)(2)(B) (West 2002).  It has veto power over a relator's attempts to dismiss, because a *qui tam* action *"may be dismissed only if the court and the Attorney General give written consent* to the dismissal and their reasons

for consenting." (Emphasis added.) 740 ILCS 175/4(b)(1) (West 2002). It can also decide to pursue the case through an alternate forum (740 ILCS 175/4(c)(5) (West 2002)).

Even where the state initially declines to intervene and conduct the action, it has the right to receive copies of all pleadings and depositions and to intervene at a later date upon a showing of good cause. 740 ILCS 175/4(c)(3) (West 2002). Only the state may intervene or bring a related action based on the facts underlying a pending *qui tam* action. 740 ILCS 175/4(b)(5) (West 2002). With court approval, the state can prosecute the action without interference from or participation by a relator and restrict a relator's participation in the case. 740 ILCS 175/4(c)(2)(D) (West 2002). Even if it declines to conduct an action, the state can control a relator's discovery in the case. 740 ILCS 175/4(c)(4) (West 2002).

As shown above, except for a relator's statutorily assigned standing to bring a *qui tam* action and prerogative to conduct the case should the state decline to intervene, all actions by the relator regarding a *qui tam* action are subject to the state's review and approval. "[T]he Act's *qui tam* provisions ensure the Attorney General retains authority to control the litigation at every stage of the proceedings." *Scachitti*, 215 Ill. 2d at 510-11, 831 N.E.2d at 560. Although a relator may "conduct" a *qui tam* action on the state's behalf, the Attorney General retains authority to "control" the litigation. *Scachitti*, 215 Ill. 2d at 510, 831 N.E.2d at 560. And, since the Act does not provide otherwise, part of that control necessarily entails dismissing an action over a

11

relator's objections after the relator has been given an opportunity to address the dismissal in a hearing.

The Act is silent as to what the hearing should entail, what the court should consider during the hearing or whether the court even has the power to deny the Attorney General's request for dismissal of an action. There is no case law in Illinois specifically addressing the standard to be applied, if any, to a dismissal request. Federal cases analyzing the similar dismissal provision in the FCA vary in their treatment of the provision. For example, as previously discussed, in *Sequoia Orange,* the Ninth Circuit Court of Appeals determined that the government does not have unlimited discretion to dismiss an action and it was for the court to determine whether dismissal should be granted, applying a two-part test under which the government must show a valid government purpose and a rational relationship between the proposed dismissal and that purpose. *Sequoia Orange*, 151 F.3d at 1145.

In contrast, in *Swift v. United States of America*, 318 F.3d 250 (D.C. Cir. 2003), the District of Columbia court of appeals held that the FCA dismissal provision does not give the judiciary general oversight of the executive branch's judgment regarding whether an action brought in its name should be dismissed. *Swift*, 318 F.3d at 252-53. It read the dismissal provision as giving the government an essentially unfettered right to dismiss an action, limited only by the requirement that a relator has a right to a hearing or if there is evidence of fraud on the court. *Swift*, 318 F.3d at 252-53. "The relator's right to a hearing * * * is all that points to a role for the courts in deciding

whether the case must go forward despite the government's decision to end it." *Swift*, 318 F.3d at 253. *Swift* rejected *Sequoia Orange*'s view that the dismissal provision authorized judicial review of the government's reasons for dismissal, finding instead that nothing in the provision purported to deprive the executive branch of its historical prerogative to decide which cases should go forward in the name of the United States. *Swift*, 318 F.3d at 253. The court considered the dismissal provision of the FCA in light of the separation of powers doctrine. *Swift*, 318 F.3d at 252. Noting the presumption that the executive is acting rationally and in good faith, *Swift* found the government's discretion to dismiss an action is, generally, committed to the government's absolute discretion and "the function of a hearing [on the relator's objections to the executive's decision to dismiss] * * * is simply to give the relator a formal opportunity to convince the government not to end the case." *Swift*, 318 F.3d at 253.

In *Ridenour v. Kaiser-Hill Co*, 397 F.3d 925 (10th Cir. 2005), the Tenth Circuit Court of Appeals declined to follow *Swift* and, instead, followed *Sequoia Orange*, finding the two-part test the appropriate standard of review for a government motion to dismiss a *qui tam* action. *Ridenour*, 397 F.3d at 935-36. *Ridenour* distinguished *Swift* because, although the government had not intervened in either *Swift* or *Ridenour*, it had served the *Ridenour* defendants with a complaint while it had not so served the *Swift* defendants. *Ridenour*, 397 F.3d at 935. The court determined that service on the defendants necessitated construing the hearing language in the dismissal provision as imparting more substantive rights for a relator and that the *Sequoia Orange* test

13

protected the rights of the relator to judicial review of a government motion. *Ridenour*, 397 F.3d at 935-36. Interestingly, notwithstanding its decision to follow *Sequoia Orange* rather than *Swift*, the court noted "[i]t is not clear whether in practice this notice and hearing requirement [in the FCA dismissal provision] has amounted to much of a hurdle for the government. However, we note that Congress apparently intended that the provision authorizing relators to formally object to any motions to dismiss or proposed settlements between the government and a defendant should not pose a significant burden for the government or court." *Ridenour*, 397 F.3d at 931 n.10.

At its core, the issue here is whether the decision to proceed with a *qui tam* action should be made by the executive branch or by the judicial branch. Only the Attorney General is empowered to represent the state in litigation in which it is the real party in interest. *Lyons v. Ryan*, 201 Ill. 2d 529, 541, 780 N.E.2d 1098, 1105-06 (2002). Legislation can add to the powers of the Attorney General but it cannot reduce the Attorney General's common law authority to direct the legal affairs of the state. *Lyons*, 201 Ill. 2d at 541, 780 N.E.2d at 1106. If we interpret section 4(c)(2)(A) of the Act to require judicial review of the Attorney General's decision to dismiss an action, whether through application of the *Sequoia Orange* test or any other "checks and balances" approach, we give the court veto power over the state's decision to dismiss, essentially usurping the Attorney General's power to direct the legal affairs of the state and putting that power into the hands of the court. The section 4(c)(2)(A) requirement that the relator be given a hearing on the state's decision to voluntarily dismiss a case

14

necessarily gives the court approval of that dismissal decision. It does not, however, require that the court second guess the state's decision to dismiss by conducting an inquiry into the state's motivations. We hesitate to say that the court's role in a section 4(c)(2)(A) hearing is solely to "rubberstamp" the state's decision to dismiss a *qui tam* action over the relator's objections. However, the presumption is that the state is acting in good faith and, barring glaring evidence of fraud or bad faith by the state, it is the state's prerogative to decide which case to pursue, not the court's. Neither fraud nor bad faith was alleged here. Accordingly, we affirm the circuit court's dismissal of the action, albeit on another basis than that found by the court.

Relator also argued that the court erred in denying its request for discovery. Given our determination that evidence of the state's reasons and the spuriousness thereof was not relevant in the hearing, the court did not err in denying relator's request for discovery.

For the reasons stated above, we affirm the decision of the circuit court.

Affirmed.

THEIS, P.J., and GREIMAN, J., concur.