2021 IL App (1st) 192159

FIRST DISTRICT
FIRST DIVISION
March 8, 2021

No. 1-19-2159

| | | |
|---|---|---|
| THE STATE OF ILLINOIS *ex rel.* MATTHEW HURST and SARRAF GENTILE LLP, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | ) ) | No. 17 L 3277 |
| v. | ) ) | The Honorable |
| FANATICS, INC., FANATICS RETAIL GROUP, INC.; FANATICS RETAIL GROUP CHICAGO, INC.; FANATICS RETAIL GROUP NORTH, INC.; FANATICS RETAIL GROUP FULFULLMENT, INC.; DREAMS RETAIL CORPORATION; FANSEDGE, INC., and DOES 1-10, | ) ) ) ) ) ) ) ) | James E. Snyder, Judge Presiding. |
| Defendants-Appellees | ) ) | |
| (THE STATE OF ILLINOIS, Intervenor-Appellee). | ) ) ) ) | |

JUSTICE COGHLAN delivered the judgment of the court, with opinion.
Justices Hyman and Pierce concurred in the judgment and opinion.

**OPINION**

¶ 1       Relators-appellants, Matthew Hurst and Sarraf Gentile LLP, brought this *qui tam* action under the Illinois False Claims Act (Act) (740 ILCS 175/1 *et seq.* (West 2016)) against defendants Fanatics, Inc., and its subsidiaries (collectively referred to as Fanatics). The relators claimed that Fanatics knowingly charged customers sales tax at a rate of 3% instead of the statutorily required rate of 6.25% on internet sales shipped to Illinois, resulting in the loss of tax revenue to Illinois.

¶ 2       Before the relators filed their *qui tam* complaint, the Illinois Department of Revenue (Department) initiated an audit of Fanatics that ultimately resulted in a proposed tax liability of

$2.1 million, which Fanatics did not dispute. After the audit concluded, the State moved to dismiss the *qui tam* complaint. The relators filed a cross-motion for a finding that Fanatics' $2.1 million payment that resulted from the audit was an "alternate remedy" under the Act, entitling them to a portion of Fanatics' tax payment. The trial court granted the State's motion to dismiss and denied the relators' cross-motion. Renewing their argument that they are entitled to a portion of Fanatics' $2.1 million payment, the relators appeal the denial of their cross-motion.[1] We affirm.

¶ 3                                BACKGROUND

¶ 4                        A. Retailers' Occupation Tax Act

¶ 5        In Illinois, the Retailers' Occupation Tax Act (ROTA) (35 ILCS 120/1 *et seq.* (West 2016)) imposes a tax on retailers who sell tangible personal property. *Irwin Industrial Tool Co. v. Department of Revenue*, 238 Ill. 2d 332, 340 (2010). A retailer remits the retailers' occupation tax to the Department, which the retailer collects by charging customers what is commonly known as "sales tax" on the purchase of tangible personal property. *Citibank, N.A. v. Illinois Department of Revenue*, 2017 IL 121634, ¶ 2. The sales tax rate charged to customers is 6.25%. 35 ILCS 120/2-10 (West 2016).

¶ 6                          B. The False Claims Act

¶ 7        Under section 3(a)(1)(G) of the Act, any person who "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the State, is liable to the State for a civil penalty." 740 ILCS 175/3(a)(1)(G) (West 2016). Section 4(b)(1) of the Act authorizes private persons, referred to as plaintiffs-relators, to bring a civil action against any person violating section 3(a)(1)(G) "for the person and for the State" "in the name of the

---

[1]The relators do not appeal the dismissal of their *qui tam* complaint and have raised no claims against Fanatics in this appeal.

State." 740 ILCS 175/4(b)(1) (West 2016); *State ex rel. Leibowitz v. Family Vision Care, LLC*, 2020 IL 124754, ¶ 62. The action brought by a relator is known as a "*qui tam*" action. *People ex rel. Lindblom v. Sears Brands, LLC*, 2018 IL App (1st) 171468, ¶ 7. The relator serves a copy of the complaint and written disclosure of substantially all material evidence and information upon the State, and the complaint remains under seal for at least 60 days. 740 ILCS 175/4(b)(2) (West 2016); *Family Vision Care, LLC*, 2020 IL 124754, ¶ 78.

¶ 8        Within 60 days after receiving the complaint, or after an allowed extension of time during which the complaint remains under seal, the State may elect to intervene and proceed with the action or decline to intervene, which allows the relator to conduct the action. 740 ILCS 175/4(b)(2) (West 2016); *Family Vision Care, LLC*, 2020 IL 124754, ¶ 78. A relator is a party to the *qui tam* action and is awarded a portion of the proceeds or settlement if the action results in a recovery. 740 ILCS 175/4(d) (West 2016); *State ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 2018 IL 122487, ¶ 8; *Sears Brands, LLC*, 2018 IL App (1st) 171468, ¶ 8. Instead of intervening in an action, the State may "elect to pursue its claim through any alternate remedy available to the State, including any administrative proceeding to determine a civil money penalty." 740 ILCS 175/4(c)(5) (West 2016). A relator is still entitled to a portion of the proceeds from the action or settlement if the State elects to pursue the claim through an "alternate remedy." 740 ILCS 175/4(c)(5) (West 2016).

¶ 9                                    C. The Relators' Case

¶ 10        Fanatics is an "online retailer of team and league licensed sports apparel and collectibles." In January 2017, the Department assigned an employee to conduct a sales and use tax audit of Fanatics for the period of August 2014 to December 2017. On March 22, 2017, after the Department's employee was unsuccessful in contacting Fanatics by telephone to begin the audit,

the Department mailed a "notice of audit initiation" to Fanatics.

¶ 11    Meanwhile, from March 1, 2017, to March 17, 2017, the relators completed multiple online purchase transactions from Fanatics with shipping to a Chicago address and discovered that Fanatics "charged insufficient sales tax." On those purchases, Fanatics consistently collected sales tax at 3% instead of the required 6.25%. Based on those transactions, the relators commenced a "False Claims Act" action against Fanatics and later amended the *qui tam* complaint, alleging Fanatics "knowingly fail[ed] to collect and remit sales taxes to the State on sales made to State residents" by "falsely stating that only 3% is due as taxes on website sales to Illinois customers." The relators requested as an award the maximum percentage of any recovery allowed under the Act, plus costs and attorney fees.

¶ 12    On March 24, 2017, the relators notified the Illinois Attorney General of its intent to file the *qui tam* complaint against Fanatics. 740 ILCS 175/4(b)(2) (West 2016). On March 31, the relators filed the *qui tam* complaint under seal, and the State later requested that the complaint remain under seal beyond six months. Eight months later in November 2017, the State "decline[d] to intervene in this case and instead permit[ed] the Relator to proceed with the prosecution of the action" on the State's behalf. The State "reserve[d] its right to dismiss or to intervene in this action at a later date." On November 29, 2017, the *qui tam* complaint was unsealed.

¶ 13    While compiling data for the ongoing audit, Fanatics discovered that it collected sales tax at the incorrect rate "due to a source data reporting error during the transition of the Company's websites from one e-commerce platform to another." On November 28, 2017, one day before the *qui tam* complaint was unsealed and while the audit was still pending, Fanatics made a $2.4 million voluntary tax payment to the Department for its estimated under-collected sales tax.

¶ 14    On January 9, 2019, following the completion of its audit, the Department issued to

Fanatics a "notice of proposed liability," assessing $2.1 million as under-collected sales tax, but did not impose any penalties. Fanatics waived further review of the Department's tax liability determination.

¶ 15    On July 12, 2019, the State exercised its "prosecutorial discretion" and moved to dismiss the relators' *qui tam* amended complaint, arguing (1) relators did not alert the State to a potential tax fraud because the audit had been initiated before relators notified the State of their intent to file a complaint; (2) Fanatics made a voluntary payment that exceeded the tax liability before the complaint was unsealed; and (3) the evidence showed Fanatics may not have acted with the scienter to violate the Act. The relators filed a "cross-motion for finding of 'alternate remedy' " under the Act, seeking a portion of Fanatics' $2.1 million payment, claiming that resolving the *qui tam* litigation through an audit was an "alternate remedy" to intervening in the relators' action. Following a hearing on the motions, the trial court granted the State's motion to dismiss with prejudice, finding that the relators did not present any "glaring evidence of fraud or bad faith by the State" and denied the relators' "cross-motion for finding of alternative remedy."

¶ 16                                    ANALYSIS

¶ 17    The relators argue that the Department's issuance of the "notice of proposed liability" was an "alternate remedy," entitling them to a portion of Fanatics' $2.1 million payment for the under-collected sales tax.

¶ 18    Whether the State recovered proceeds from an "alternate remedy" under the Act is a question of law that we review *de novo*. See *United States ex rel. Hefner v. Hackensack University Medical Center*, 495 F.3d 103, 108 (3rd Cir. 2007) (order denying an "alternate remedy" presents a question of law); *Dynak v. Board of Education of Wood Dale School District 7*, 2020 IL 125062, ¶ 15 (questions of law reviewed *de novo*). The Act is modeled after the federal False Claims Act

(31 U.S.C. §§ 3729-3733 (2018)) (*Lyons Township ex rel. Kielczynski v. Village of Indian Head Park*, 2017 IL App (1st) 161574, ¶ 10), and Illinois courts turn to federal case law for guidance in interpreting the Act (*People ex rel. Schad, Diamond & Shedden, P.C. v. QVC, Inc.*, 2015 IL App (1st) 132999, ¶ 30).

¶ 19    In this case, the Department initiated and conducted an audit, which ultimately led to the issuance of a "notice of proposed liability" for $2.1 million in under-collected taxes, but no penalties were assessed. The Act's "alternate remedy" provision applies when the State elects not to intervene in the *qui tam* action but thereafter commences another proceeding to pursue the claim, which results in achieving a remedy. See *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 342 F.3d 634, 649 (6th Cir. 2003); *United States ex rel. Barajas v. Northrop Corp.*, 258 F.3d 1004, 1010 (9th Cir. 2001); *United States ex rel. LaCorte v. Wagner*, 185 F.3d 188, 191 (4th Cir. 1999). The Department commenced an audit and concluded the audit it had commenced. At no time did the State pursue an "alternate remedy"; it pursued one and only one remedy—the audit. An "alternate remedy" means a remedy other than that on which it had originally embarked. See *United States v. L-3 Communications EOTech, Inc.,* 921 F.3d 11, 16-17 (2d Cir. 2019) ("when there is no *qui tam* action for the government to 'take over,' the government's filing of its own action is not an 'alternate' to taking over (or not taking over) a *qui tam* action" (emphasis omitted)); *United States ex rel. Babalola v. Sharma*, 746 F.3d 157, 162 (5th Cir. 2014) ("the qui tam proceeding must have been in existence at the time of the Government's election of the alternate remedy").

¶ 20    Moreover, Fanatics' voluntary payment of its estimated under-collected tax could not be an "alternate remedy" because, at the time of payment, Fanatics had no knowledge of the *qui tam* action that was still under seal; rather, the voluntary payment was in response to the Department's

- 6 -

ongoing audit. Similarly, the "notice of proposed liability" was the end result of the Department's continuous audit substantiating Fanatics' liability for its under-collected tax (akin to a judgment) and not a settlement under the Department's established audit procedures. See 86 Ill. Adm. Code 215.115(a) (2007) ("[o]nce the auditor has conducted the audit and made an examination of the taxpayer's books and records provided during the audit process, the Department shall issue a written notice to the taxpayer" "referred to as a Notice of Proposed Liability"); 86 Ill. Adm. Code 200.137(a) (1996) ("[o]nce a protest and request for hearing has been filed" a taxpayer or duly authorized representatives may offer a settlement as to an outstanding dispute over an assessed liability).

¶ 21     In addition, "the presumption is that the state is acting in good faith and, barring glaring evidence of fraud or bad faith by the state, it is the state's prerogative to decide which case to pursue, not the court's." *State ex rel. Beeler, Schad & Diamond, P.C. v. Burlington Coat Factory Warehouse Corp.*, 369 Ill. App. 3d 507, 517 (2006). Exercising its broad discretion, the State moved to dismiss the *qui tam* complaint because "the evidence suggests that [Fanatics] may lack the scienter necessary for liability" under the Act. See *QVC, Inc.*, 2015 IL App (1st) 132999, ¶ 35 (the relator bears the "burden of showing that the State acted in bad faith when it dismissed the *qui tam* action"); *Burlington Coat Factory Warehouse Corp.*, 369 Ill. App. 3d at 512 (the State has "almost unlimited discretion to voluntarily dismiss" a *qui tam* action); *People ex rel. Beeler, Schad & Diamond, P.C. v. Relax the Back Corp.*, 2016 IL App (1st) 151580, ¶ 34 ("If the defendant conducts a good-faith investigation into its tax obligations, and its failure to collect the tax resulted from an honest misinterpretation of unsettled law or simple negligence, there is no liability under the False Claims Act."). Because the relators did not appeal the dismissal of their complaint or the trial court's finding "that the movant, the Relator, has [not] presented glaring evidence of fraud or

- 7 -

bad faith by the State," we cannot consider the merits of the *qui tam* complaint or its dismissal.

¶ 22    In sum, the "notice of proposed liability" issued at the conclusion of the already initiated audit did not result from the government's pursuit of an alternate remedy. See *L-3 Communications EOTech, Inc.*, 921 F.3d at 30 (a relator is entitled to share in the recovery gained by the government "if the relator's *qui tam* action was pending when the government was choosing what course to pursue"); *United States ex rel. Kolchinsky v. Moody's Corp.*, 238 F. Supp. 3d 550, 561 (S.D.N.Y. 2017) (relator "not entitled to the proceeds of a settled action he did not initiate"). Therefore, under the facts of this case, there was no recovery from an "alternate remedy" under the Act.

¶ 23                                CONCLUSION

¶ 24    For the reasons stated, we affirm the trial court's denial of the relators' motion for a cross-finding of an "alternate remedy."

¶ 25    Affirmed.

**No. 1-19-2159**

| | |
|---|---|
| **Cite as:** | *State ex rel. Hurst v. Fanatics, Inc.*, 2021 IL App (1st) 192159 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-L-3277; the Hon. James E. Snyder, Judge, presiding. |
| **Attorneys for Appellant:** | Matthew Hurst, of Heffner Hurst, of Chicago, and Ronen Sarraf and Joseph Gentile, of Sarraf Gentile LLP, of Great Neck, New York, appellants. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Frank H. Bieszczat, Assistant Attorney General, of counsel), for appellee the State of Illinois.<br><br>Gail H. Morse and Andrew D. Hoeg, of Jenner & Block LLP, of Chicago, for other appellees. |