2021 IL App (1st) 192273-U

No. 1-19-2273

Order filed May 28, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| STATE OF ILLINOIS *ex rel.* CLINTON KRISLOV, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 L 8650 |
| | ) | |
| BMO HARRIS BANK, N.A., | ) | Honorable |
| | ) | Patrick Sherlock, |
| Defendant-Appellee, | ) | Judge, Presiding. |
| | ) | |
| (The State of Illinois, Intervenor-Appellee). | ) | |

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Justices Sheldon Harris and Maureen Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Circuit court properly granted the State's motion to dismiss as a proper exercise of its prosecutorial discretion in a *qui tam* action and the record failed to support a finding of bad faith by the State in filing the motion to dismiss; the denial of leave to amend the complaint was not an abuse of discretion where relator did not file a proper motion to amend its pleadings and did not provide the circuit court with the proposed amendment.

¶ 2 Plaintiff, State of Illinois, ex rel. Clinton Krislov (relator) appeals from an order of the circuit court of Cook County that granted the State of Illinois' (State/intervenor) motion to dismiss its *qui tam* complaint pursuant to the State's prosecutorial discretion under the Illinois False Claims Act (False Claims Act) (740 ILCS 175/4(c)(2)(A) (West 2018)).  On appeal, relator contends that the circuit court erred by granting the State's motion to dismiss its complaint.  Relator first argues that the Federal and Illinois False Claims Act are read and applied the same because: (1) the valid purpose test applies, and the State does not have an unfettered right to dismiss; (2) prosecutorial discretion requires that some explained rational basis must be articulated; and (3) the valid purpose test was unmet by the State.  Additionally, relator contends that: (1) the State's argument that relator's claim lacks merit ignores the plain meaning of the statute which does not include a credit card as property that would trigger the exemption; and (2) relator should have been granted leave to replead.  For the following reasons, we affirm.

¶ 3 BACKGROUND

¶ 4 On August 10, 2018, relator filed a *qui tam*[1] action on behalf of the State of Illinois against defendant, BMO Harris Bank, N.A. (BMO Harris) for violations of the False Claims Act (740 ILCS 175/1 *et seq*. (West 2018)) to recover treble damages, civil penalties, and costs for BMO Harris' alleged concealment and avoidance of its obligations to transmit abandoned money to the State.  Relator based its claims on BMO Harris' alleged failure to report and turn over to the State abandoned money in customer accounts.  Relator alleged that BMO Harris had a policy of charging a monthly maintenance fee until the account was totally depleted and treated that maintenance fee

---

[1] A "*qui tam* action" is an action brought under a statute authorizing an informant to bring a civil action to recover a penalty for the commission or omission of a certain act and providing that a part of the penalty will be paid to the informer. *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 494 (2005).

as "activity" on the account in order to avoid reporting the account as abandoned and turning over the remaining funds to the State.

¶ 5    As factual support for its claim, relator alleged that Clinton Krislov (Krislov) opened a checking account with Harris Trust and Savings Bank[2] in 1973 and continued to use the account until approximately November 2007, at which time, the account had an approximate balance of $1631.  Krislov did not communicate or otherwise interact with BMO Harris at that time and had not used the account since. On or about May 2, 2018, Krislov went to a newly opened BMO Harris branch and inquired about resuming his banking services with BMO Harris. The bank employee was unable to find any account information for Krislov and indicated that further research would be necessary.  In July 2018, Krislov returned to the branch and spoke with the bank manager, who indicated that the account was closed with a zero balance in April 2017, and further that the bank charged a monthly $12 dormancy fee and maintenance fee each month.  The fee was charged monthly until the balance reached zero, at which time, the account was closed. Relator alleged that "at some point," BMO Harris adopted a policy of charging a maintenance fee on all checking accounts that did not meet certain waiver requirements and a policy regarding dormant accounts. Relator alleged that the bank's deposit agreement showed that BMO Harris was aware of its obligation to report and transmit abandoned funds to the State.

¶ 6    Relator further alleged that on July 15, 2013, BMO Harris mailed a statement to Krislov, which indicated that the bank would be eliminating the dormant account fee.  The statement also indicated a balance of $582.65 in the account.  Relator alleged that BMO Harris knew or should have known that Krislov was no longer using the account and that it became abandoned under the

---

[2] Harris Trust and Savings Bank became BMO Harris after a merger in 2005.

statute, thus triggering the bank's obligation to report the account. Instead, the bank intentionally charged the monthly maintenance fee to the account to avoid reporting it as abandoned and remitting the funds to the State. Relator alleged that the bank relied on the application of the monthly fee as "activity" in order to treat the account as active, even after more than five years of inactivity. Further, Relator alleged that despite BMO Harris' asserted right to charge the monthly maintenance fee under the contract with its customers, BMO Harris was still obligated to report and turn over to the State any abandoned property as defined by the statutes. As an alternate argument, relator alleged that BMO Harris' policy of not reporting accounts, where the only transactions were the monthly maintenance fee and the account owner took no steps that would rebut the presumption of abandonment, was done in "deliberate ignorance or reckless disregard" of its duty to report and remit the remaining funds to the State. Specifically, relator alleged that after the 60th month of inactivity by Krislov, BMO Harris had the duty to report the account to the State as abandoned, which would have resulted in an approximately $911 remittance to the State on Krislov's behalf.

¶ 7     Relator further alleged that the bank continued to implement its policy as of the time of the suit and reported collecting $121,570,000 in service charges on accounts in its June 30, 2018, Consolidated Reports of Condition and Income for a Bank with Domestic and Foreign Offices, a portion of which were maintenance fees charged to accounts that should have been reported as abandoned to the State. Relator alleged that this policy applied to numerous other accounts held at BMO Harris and its policy were violations of the Unclaimed Property Act (765 ILCS 1025/1 *et seq*. (West 2016)) and Revised Unclaimed Property Act (765 ILCS 1026/1 *et seq*. (West 2018)) (collectively Unclaimed Property Act). Relator sought judgment against BMO Harris for: the

amount of the State's damages, multiplied three times as required by law; up to $11,000 for each violation of the Act as civil penalties; and attorney fees and costs in prosecution the action. All documents filed in relation to the action were filed under seal by the circuit court.

¶ 8    On October 5, 2018, the State filed a motion for extension of time to elect to intervene and for extension of the seal, indicating that it required additional time to investigate the allegations raised in the relator's complaint. The circuit court granted the motion and set a status hearing for December 4, 2018. At that hearing, the State was granted an extension of 180 days for its investigation and another status was set for May 7, 2019. Several other extensions followed while the State conducted its investigation.

¶ 9    On July 15, 2019, the State exercised its "prosecutorial discretion" and moved to dismiss the relator's *qui tam* complaint under section 4(c)(2)(A) of the False Claims Act (740 ILCS 175/4(c)(2)(A) (West 2018)), arguing that: (1) based on its investigation and determination that the action lacked merit, and (2) the costs to the State, BMO Harris and the judicial system far outweighed any benefits of permitting the action to proceed. The State argued that it had discretion to dismiss false claims cases at any time under the False Claims Act. In support of its motion, the State asserted that after concluding its investigation, which included issuing a subpoena and obtaining relevant documents from BMO Harris as well as discussing the matter with the State Treasurer, the State concluded that the complaint suffered from "significant legal and factual defects" that did not justify continued expenditure of its litigation resources.

¶ 10    Relator disagreed, asserting that the State did not have unfettered discretion to dismiss and further urged the circuit court to follow a 1998 California federal court decision, *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F. 3d 1139 (9th Cir. 1998). In that

case, the Ninth Circuit held that the government must make a proper showing of a valid purpose for dismissal that was not arbitrary or capricious, applying the rational relation test. *Id.* at 1145-46. Additionally, relator argued that the statute did not include a credit card as property that would trigger the exemption; but did not support that argument with any further detail. A request to replead was made as well. Relator attached a letter addressed to Krislov from the bank regarding the dormancy of the account and communication by the bank in 2011 to determine Krislov's interest in the account, which was signed and returned. Additionally, the bank refunded the last $100 in maintenance fees that were charged to the account.

¶ 11    The circuit court issued a memorandum order on October 7, 2019, which granted the State's motion to dismiss.  In support of its decision, the circuit court noted that, as found by our supreme court, the State is the real party in interest in *qui tam* actions; such plaintiffs acting as statutorily designated agents for the State, may proceed only with the consent of the Attorney General and remain completely statutorily subordinate to the Attorney General at all times. Additionally, the court noted that the False Claims Act unambiguously allows the State to dismiss the complaint over the objections of the relator. The court further noted that the State did its due diligence through reviewing the complaint, issuing a subpoena, reviewing BMO Harris' documents and conferring with the State Treasurer, and subsequently concluded that the action lacked merit. Noting relator's reliance on the Ninth Circuit case for the test to be applied against the State's motion to dismiss, the circuit court determined that it was not bound by that case, but even if it considered the case, there were no facts to support the State's decision not to proceed as arbitrary and capricious. The circuit court also noted that relator failed to provide the court with any reason that the State was acting in a fraudulent, arbitrary or capricious way suggesting an

abuse of power. Moreover, the court noted that relator's disagreement with the State's interpretation of the law did not amount to fraud or an abuse of power, and further that the unambiguous language of the statute, as reinforced by binding caselaw, granted the State prosecutorial power over cases where it was a party.

¶ 12    Relator filed its timely notice of appeal on November 5, 2019. Subsequently, on January 6, 2020, relator filed an unopposed motion to have the circuit court record unsealed so that the record could be prepared on appeal.

¶ 13                                    DISCUSSION

¶ 14    On appeal, relator contends that the circuit court erred by granting the State's motion to dismiss its complaint. Relator first argues because the Federal (Federal False Claims Act) and Illinois False Claims Acts (31 U.S.C. § 3729 *et seq.* (2018); 740 ILCS 175/1 *et seq.*(West 2018)) are read and applied the same, (1) the valid purpose test applies and that the State does not have an unfettered right to dismiss; (2) prosecutorial discretion requires some explained rational basis must be articulated; and (3) the valid purpose test was unmet by the State. Additionally, relator contends that: (1) the State's argument that relator's claim lacks merit ignores the plain meaning of the statute which does not include a credit card as property that would trigger the exemption; and (2) it should have been granted leave to replead.

¶ 15                          A. Dismissal of the *Qui Tam* Action

¶ 16                          1. The Illinois False Claims Act

¶ 17    The False Claims Act sets the parameters for the relator's rights in this action. *People ex rel. Schad, Diamond and Shedden, P.C. v. QVC, Inc.*, 2015 IL App (1st) 132999, ¶ 13. Under section 3(a)(1)(G) of the False Claims Act, any person who "knowingly conceals or knowingly

and improperly avoids or decreases an obligation to pay or transmit money or property to the State, is liable to the State for a civil penalty." 740 ILCS 175/3(a)(1)(G) (West 2018); *State ex rel. Hurst v. Fanatics, Inc.*, 2021 IL App (1st) 192159, ¶ 7. Section 4(b)(1) of the False Claims Act authorizes private persons, referred to as a plaintiffs-relators, to bring a civil action against any person violating section 3(a)(1)(G) "for the person and for the State" "in the name of the State." 740 ILCS 175/4(b)(1) (West 2018); *Fanatics*, 2021 IL App (1st) 192159, ¶ 7. The action brought by a relator is known as a "*qui tam*" action. *Fanatics*, 2021 IL App (1st) 192159, ¶ 7; *People ex rel. Lindblom v. Sears Brands, LLC*, 2018 IL App (1st) 171468, ¶ 7. The relator serves a copy of the complaint and written disclosure of substantially all material evidence and information upon the State, and the complaint remains under seal for at least 60 days. 740 ILCS 175/4(b)(2) (West 2018); *Fanatics*, 2021 IL App (1st) 192159, ¶ 7.

¶ 18 Within 60 days after receiving the complaint, or after an allowed extension of time during which the complaint remains under seal, the State may elect to intervene and proceed with the action or decline to intervene, which allows the relator to conduct the action. 740 ILCS 175/4(b)(2) (West 2018); *Fanatics*, 2021 IL App (1st) 192159, ¶ 8. A relator is a party to the *qui tam* action and is awarded a portion of the proceeds or settlement if the action results in a recovery. 740 ILCS 175/4(d) (West 2018); *Fanatics*, 2021 IL App (1st) 192159, ¶ 8. Instead of intervening in an action, the State may "elect to pursue its claim through any alternate remedy available to the State, including any administrative proceeding to determine a civil money penalty." 740 ILCS 175/4(c)(5) (West 2018); *Fanatics*, 2021 IL App (1st) 192159, ¶ 8. A relator is still entitled to a portion of the proceeds from the action or settlement if the State elects to pursue the claim through an "alternate remedy." 740 ILCS 175/4(c) (West 2018).

¶ 19 The False Claims Act expressly empowers the State to "dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the State of the filing of the motion and the court has provided the person with an opportunity for a hearing on that motion." 740 ILCS 175/4(c)(2)(A) (West 2018); *QVC*, 2015 IL App (1st) 132999, ¶ 14. As we explained in *State ex rel. Beeler, Schad & Diamond v. Burlington Coat Factory Warehouse Corp.*, 369 Ill. App. 3d 507, 512-517 (2006),

> "reading the provision in context with the other provisions of the [False Claims] Act, it is clear that the state has complete control over a *qui tam* action, and accordingly, almost unlimited discretion to voluntarily dismiss such an action. * * * '[Q]*ui tam* plaintiffs, acting as statutorily designated agents for the state, may proceed only with the consent of the attorney general, and remain completely subordinate to the attorney general at all times.' * * * Even if it declines to conduct an action, the state can control a relator's discovery in the case." *Burlington Coat Factory*, 369 Ill. App. 3d at 512-517.

¶ 20                    2. Application of the Valid Purpose Test

¶ 21 We first address relator's claim that the valid purpose test applies because the Federal False Claims Act and the False Claims Acts are similar. Relator bases this contention on the Ninth Circuit Court of Appeals decision in *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139 (1998). Relator's argument ignores this court's consistent rejection of such arguments since at least 2006. See, e.g., *QVC, Inc.*, 2015 IL App (1st) 132999; *Burlington Coat Factory*, 369 Ill. App. 3d 507, 511 (2006). For the reasons detailed below, we likewise reject relator's argument.

¶ 22    As noted by our supreme court in *Scachitti v. UBS Financial Services,* 215 Ill. 2d 484, 506-07 (2005), our False Claims Act "closely mirrors" the Federal False Claims Act, which provides that a person may bring a civil action for a violation of the federal act for the person and for the United States government. In a dismissal provision substantially similar to the dismissal provision in section 4(c)(2)(A) of the False Claims Act, the Federal False Claims Act provides that the federal government may dismiss a *qui tam* action despite objections by the relator as long as the relator is notified and has been provided an opportunity for a hearing on the dismissal.  31 U.S.C. § 3730(c)(2) (2018); *Burlington Coat Factory Warehouse Corp.*, 369 Ill. App. 3d at 511. *Sequoia Orange* interpreted this provision and set forth a two-part test for determining whether the government's motion to dismiss a *qui tam* action should be granted. *Sequoia Orange*, 151 F.3d at 1145. Under *Sequoia Orange*, the government must first identify a valid governmental purpose for the dismissal and then show a rational relation between dismissal and accomplishment of that purpose. *Sequoia Orange*, 151 F.3d at 1145. If this two-part test is satisfied, then the burden shifts to the relator to show that dismissal is fraudulent, arbitrary and capricious, or illegal.  *Sequoia Orange*, 151 F.3d at 1145.

¶ 23    In *Burlington Coat Factory*, while we agreed that the state's discretion to dismiss was not entirely unfettered, it was, however, only minimally qualified by the False Claims Act and not subject to a *Sequoia Orange* checks and balances test.  *Burlington Coat Factory*, 369 Ill. App. 3d at 512. In *QVC*, we framed the issue as "whether the decision to proceed with a *qui tam* action should be made by the executive branch or by the judicial branch," noting that if we interpret section 4(c)(2)(A) of the False Claims Act to require judicial review of the Attorney General's decision to dismiss an action,  * * *  we give the court veto power over the State's decision to

dismiss, essentially usurping the Attorney General's power to direct the legal affairs of the Sate and putting that power into the hands of the court." *QVC*, 2015 IL App (1st) 132999, ¶ 14.

¶ 24    As the chief legal officer of the State, the Attorney General's authority is derived from the Illinois Constitution (Ill. Const. 1970, art. V, § 15), and includes those powers traditionally held at common law. *State ex rel. Leibowitz v. Family Vision Care*, 2020 IL 124754, ¶ 75. Only the Attorney General is empowered to represent the State in litigation where the State is the real party in interest. *Id.*  The legislature may add to the powers of the Attorney General, but it cannot reduce the Attorney General's common-law authority in directing the legal affairs of the State. *Id.*  Thus, any legislation that usurps the common-law powers of the Attorney General is invalid.  *Id.* The *qui tam* provisions of the False Claims Act impose significant restrictions on *qui tam* plaintiffs; although *qui tam* plaintiffs may "conduct" the litigation on the State's behalf, the Attorney General retains authority to "control" the litigation.  *Id.*  at ¶ 80. Accordingly, the False Claims Act does not usurp the constitutional powers of the Attorney General.  *Id.*

¶ 25    We have previously determined that the requirement in section 4(c)(2)(A) of the False Claims Act that the relator be given a hearing on the State's decision to voluntarily dismiss a case necessarily gives the court approval of that dismissal decision.  *QVC*, 2015 IL App (1st) 132999, ¶ 14. However, that section does not require that a court second-guess the State's decision to dismiss by conducting an inquiry into the State's motivations; we presume that the State is acting in good faith and, barring glaring evidence of fraud or bad faith by the State, it is the State's prerogative to decide which case to pursue, not the court's. *Id*. (citing *Burlington Coat Factor*y, 369 Ill. App. 3d at 512-517).

¶ 26    In the present case, relator has not shown that the State acted fraudulently or in bad faith by dismissing the *qui tam* action. Nor has relator provided any reason for asking this court to depart from its prior decisions that have previously considered and rejected the same arguments. Relator attempts to argue that the State engaged in bad faith by misreading the statute, failing to attach an affidavit to its motion to dismiss and further that its determination that the issue raised was "not material" was erroneous. We disagree with relator's contention.

¶ 27    Our review of the record establishes that the State reviewed the *qui tam* complaint and engaged in discovery while it considered whether to intervene in relator's action or otherwise allow it to continue.  The State issued a subpoena to BMO Harris for certain documents, reviewed those documents and consulted with the State Treasurer before concluding that the complaint suffered from "significant legal and factual defects" that did not justify continued expenditure of its litigation resources. Additionally, relator was notified, and a hearing was conducted on the State's motion to dismiss as is required by the False Claims Act.  As the State fully complied with the requirements of the False Claims Act, we find that the State properly exercised its statutory prosecutorial discretion.  740 ILCS 175/4(c)(2)(A) (West 2018).

¶ 28    Relator's alternate argument that "the State's argument that relator's claim lacks merit ignores the plain meaning of the statute which does not include a credit card as property that would trigger the exemption" does not evidence bad faith on the State's part. Relator concludes, without caselaw support, that the definition of property under the Unclaimed Property Act does not include an unrelated credit card. Relator's failure to cite to caselaw in support of its argument violates Supreme Court Rule 341(h)(7) (eff. May 25, 2018) and as such, his argument is waived.

¶ 29    Accordingly, we decline to reverse our prior decisions that have considered this issue as we find they were correctly decided. Thus, we find that relator's contention is without merit and the circuit court properly granted the State's motion to dismiss as a proper exercise of its prosecutorial discretion.

¶ 30                              B. Denial of Leave to Replead

¶ 31    Relator additionally contends that it should have been granted leave to replead because if there were defects in the complaint, the appropriate remedy was to permit amendment of the pleadings. Relator contends that it would have amended the complaint to add additional claims of individual and class consumer statutory, common law and equitable claims.

¶ 32    Although Illinois has a liberal policy of allowing the amendment of pleadings, this right is not unlimited. *Steenes v. MAC Property Management, LLC*, 2014 IL App (1st) 120719, ¶ 38. As a rule, the circuit court's ruling to allow or deny an amendment is a matter of discretion and will not be reversed absent an abuse of discretion. *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 432 (1999). In exercising its discretion, the circuit court should consider whether: (1) the proposed amendment would cure the defects in the original pleading; (2) the amendment will surprise or prejudice other parties; (3) the proposed amendment is timely; and (4) previous opportunities to amend the pleading can be identified. *Id.* If the proposed amendment does not state a cognizable claim, and thus fails the first factor, courts of review will often not proceed with further analysis. *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 7 (2004).

¶ 33    Here the record reveals that relator made a request to replead as part of its response to the State's motion to dismiss. Relator never made a proper motion to the court to amend its complaint,

and thus, there was nothing for the circuit court to act on. *In re Huron Consulting Group, Inc. v. Shareholder Derivative Litigation*, 2012 IL App (1st) 103519, ¶ 68. Relator's request to replead was contained in the final substantive paragraph of its response to the State's motion to dismiss as follows: "[r]egardless, if there are any defects in Relators' complaint, the appropriate remedy is to permit the pleadings to be amended," citing *Wilson v. Quinn*, 2013 IL App (5th) 120337, ¶ 18, in support. That is not a proper motion for leave to amend.  In order for the circuit court to exercise its discretion in deciding on the motion, it must review the proposed amended pleading to determine whether it would cure any defect in the pleadings, whether it was timely, whether it prejudiced the opposing party, and whether there were previous opportunities to amend. *In re Huron Consulting*, 2012 IL App (1st) 103519, ¶ 68. Here, the circuit court had not yet granted the State's motion to dismiss when relator submitted its response to that motion. Thus, relator's statement in that response could not have served as a proper motion for leave to amend, which must contain an argument for permitting amendment pursuant to the above factors and include a copy of the proposed amended pleading. *Id.* We find that the circuit court did not abuse its discretion in denying relator's request because relator never made a proper motion.

¶ 34                              CONCLUSION

¶ 35    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 36    Affirmed.